Frances Denise **MORTENSON**, as Trustee of the Christopher and Frances Mortenson Family Trust Dated August 7, 1985, Appellant (Plaintiff),

v.

Vernon L. **SCHEER**, Jolene D. Scheer, Bud Burnaugh, Jr., and Mary Burnaugh, Co–Trustees of the Burnaugh Family Trust Dated May 24, 1994, Appellees (Defendants),

and

Lee Ranches, Inc., Appellee (Defendant).

**LEE RANCHES, INC.**, Appellant (Defendant),

v.

Bud **BURNAUGH**, Jr. and Mary Burnaugh, Co–Trustees of the Burnaugh Family Trust, Dated MAY 24, 1994; and Vernon L. Sheer and Jolene D. Scheer, husband and wife, Appellees (Plaintiffs).

Nos. 96–340, 96–341.

Supreme Court of Wyoming.

May 4, 1998.

John A. MacPherson of MacPherson Law Offices, Rawlins, for Mortenson Family Trust.

Maureen T. Donohoue, Lander, for Lee Ranches, Inc.

William L. Miller of Miller and Fasse, P.C., Riverton, for Scheers and Burnaughs.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN, and LEHMAN, JJ.

THOMAS, Justice.

Frances Denise Mortenson, as Trustee of the Christopher and Frances Mortenson Family Trust, (Mortenson) and Lee Ranches, Inc. (Lee Ranches) challenge the application of the law of impossibility of performance by the trial court to excuse Vernon L. Scheer, Jolene D. Scheer, and Bud Burnaugh, Jr., and Mary Burnaugh, Co–Trustees of the Burnaugh Family Trust dated May 24, 1994, (the Scheers and Burnaughs) from performing their contract with Lee Ranches, Inc. The contract provided that the Scheers and Burnaughs would abandon their effort to establish a private road across the lands of Lee Ranches, which were sold to Mortenson, in exchange for the promise of Lee Ranches to survey and construct a "BLM resource road" which would provide alternative access to the Scheers' and Burnaughs' lands. The Scheers and Burnaughs agreed they would obtain "the necessary BLM permits and approvals, at the expense of [Lee Ranches, Inc.]" for Lee Ranches to build the road. The Bureau of Land Management (BLM) instructed the Scheers and Burnaughs that rights-of-way across private lands connecting with the proposed resource road would have to be obtained before the BLM would consider the permit application. The Scheers and Burnaughs did not obtain the rights-of-way across the private lands, and the BLM did not grant the permit. The trial court ruled that the Scheers and Burnaughs had done everything required of them by the contract, and that performance of the contract was made impossible by the refusal of the BLM to issue the permit. We hold that one who agrees to obtain a governmental permit, under the circumstances found in this case, assumes the risk of failure to obtain the permit, and performance of that party's obligations under the contract is not excused because of the failure to obtain the permit. The trial court erred in invoking the doctrine of impracticability of performance in this case, and the Judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In their Brief of Appellants, Mortenson and Lee Ranches define the issues as:

1. The finding of the trial court that Appellees had not breached the contract due to impossibility of performance is not supported by sufficient evidence.

2. The trial court erred as a matter of law when it found that the Appellees had not breached the contract due to impossibility of performance, even though the Appellees never raised impossibility as an affirmative defense.

3. The Appellants have been prejudiced by the trial court allowing appellees to amend their Complaint to plead the affirmative defense of impossibility after the entry of summary judgment on behalf of Appellants, Lee Ranches, Inc[.,] and after judgment in this matter.

The Scheers and Burnaughs adopt these issues in their Brief of Appellees.

The Scheers and Burnaughs owned a tract of land in Fremont County adjacent to Lee Ranches' land. For a number of years the Scheers and Burnaughs used a road which crossed Lee Ranches' property in order to gain access to their land. Although there was a lock on the gate and fence which enclosed Lee Ranches' land, the Scheers and Burnaughs were furnished with a key to the lock.

In 1992, Lee Ranches entered into negotiations for the sale of its ranch lands to Mortenson. During the period of negotiations, Lee Ranches changed the lock on the gate, and the Scheers and Burnaughs were prevented from using the road they previously had used. The reason for denying the use of the road to the Scheers and Burnaughs was that Mortenson had indicated it would not purchase the property if there existed any easements with respect to it. Soon after they were denied access, the Scheers and Burnaughs applied to the Board of County Commissioners of Fremont County for the establishment of a private road across Lee Ranches' property. Upon learning of this application, Mortenson advised Lee Ranches that it would not purchase the land if the private road was established.

In January of 1993, Lee Ranches endeavored to satisfy Mortenson and complete the sale of its property. It entered into a con-

tract with the Scheers and Burnaughs pursuant to which Lee Ranches had the obligation, on or before August 1, 1993, to build a "BLM resource road" for alternative access to the Scheers' and Burnaughs' property. The Scheers and Burnaughs agreed to obtain, in a timely manner, the necessary BLM permit for the construction of the resource road across the BLM land. The expense of obtaining the necessary BLM permit was to be borne by Lee Ranches, and in exchange for the agreement to build the road, the Scheers and Burnaughs agreed to withdraw their petition to establish a private road which was pending before the Fremont County Commission and abandon any efforts to obtain a private road across Lee Ranches' property. In February of 1993, the Scheers and Burnaughs applied to the BLM for a permit to construct the resource road. The BLM advised the Scheers and Burnaughs that they would have to obtain private rights-of-way across adjacent private land before the BLM would consider the permit application. Mr. Scheer met with the private landowners, but they refused to grant easements across their property. As a result, the Scheers and Burnaughs never did obtain the permit from the BLM to build the resource road. Without the permit, Lee Ranches did not construct the resource road. At the trial, Vernon Scheer testified that when the contract was made with Lee Ranches, the Scheers and Burnaughs understood that the BLM would require easements to cross private lands to connect with the BLM road.

On September 25, 1995, the Scheers and Burnaughs filed their action against Lee Ranches seeking specific performance of the contract or, alternatively, damages for breach of contract. Lee Ranches answered and filed a counterclaim in which it alleged breach of contract by the Scheers and Burnaughs. Subsequently, Mortenson brought an action against the Scheers and Burnaughs, which later was amended to include Lee Ranches as a defendant, in which Mortenson, claiming the rights of a third-party beneficiary, sought specific performance of the contract or, in the alternative, damages for breach.

Following a bench trial conducted on July 10th and 11th, 1996, the trial court entered a Judgment on August 7, 1996, in which it found that there had been no breach of the contract by Lee Ranches because the Scheers and Burnaughs had failed to obtain the requisite BLM permit. The district court refused to afford relief to Lee Ranches on its counterclaim finding that performance by the Scheers and Burnaughs of the condition that the BLM permit be obtained had become impossible. No relief was afforded to either the Scheers and Burnaughs or Lee Ranches, and further, the court found that Mortenson was not entitled to relief as a third-party beneficiary under the contract, because performance of the contract had become impossible. Subsequent to that judgment, the district court also entered an Order Granting Summary Judgment pursuant to which it dismissed the Complaint of the Scheers and Burnaughs against Lee Ranches because of the failure of the Scheers and Burnaughs to obtain the BLM permits. The appeals in this case are taken only from the Judgment entered on August 7, 1996.

■ As the focus of our resolution of the issues in this case, we rely upon the rules with respect to impracticability of performance found in RESTATEMENT (SECOND) OF CONTRACTS §§ 261, 264, & 266 (1979). While it has been common to allude to these problems as ones of impossibility of performance, we adopt the view of the RESTATEMENT that impracticability is a more appropriate term because the rule reaches situations in which true impossibility is not necessarily present. We agree with the position set forth in the Introductory Note to Chapter 11, RESTATEMENT (SECOND) OF CONTRACTS at 310 (1979), that the question is one of law for the court to resolve. This rule has been applied by other courts. "Whether a party should be excused from its obligations under a written agreement because of impracticability of performance is a question of law." *T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 924 P.2d 1239, 1248 (1996); *Luminous Neon, Inc. v. Parscale*, 17 Kan.App.2d 241, 836 P.2d 1201, 1204 (1992). We review rulings on questions of law *de novo. Blagrove v. JB Mechanical, Inc.*, 934 P.2d 1273, 1275 (Wyo.1997);

*Anderson v. Bommer,* 926 P.2d 959, 961 (Wyo.1996).

■ It is a basic principal of the law of contracts that a promisor is bound to perform the agreement according to its terms, or respond in damages for breach of the contract if the promisor unjustifiably fails to perform. *Warner v. Denis,* 84 Hawai'i 338, 933 P.2d 1372, 1381 (1997); *J.J. Cassone Bakery, Inc. v. Consolidated Edison Co. of New York,* Inc., 168 Misc.2d 272, 638 N.Y.S.2d 898, 903 (N.Y.Sup.1996). *See also, Modern status of the rules regarding impossibility of performance as defense in action for breach of contract,* 84 A.L.R.2d 12, 21 (1962); Introductory Note to Chapter 11, RESTATEMENT (SECOND) OF CONTRACTS at 309 (1979). The rule of impracticability to excuse performance is invoked when supervening circumstances render performance of one of the conditions of the contract impracticable. *Downing v. Stiles,* 635 P.2d 808, 811 (Wyo. 1981); *Kessler v. Tortoise Development, Inc.,* 130 Idaho 105, 937 P.2d 417, 420 (1997); *In Interest of Doe,* 917 S.W.2d 139, 142 (Tex. App.1996).

■ In *Downing,* we addressed the doctrine of commercial frustration, introducing that topic by citing to and quoting from the Introductory Note to Chapter 11, RESTATEMENT (SECOND) OF CONTRACTS (1979). Consistently, we rely upon RESTATEMENT (SECOND) OF CONTRACTS § 261 (1979) which states:

§ 261. **Discharge by Supervening Impracticability**

**Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.**

[4] With specific reference to this case, we also rely upon RESTATEMENT (SECOND) OF CONTRACTS § 264 (1979):

§ 264. **Prevention by Governmental Regulation or Order**

**If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made.**

[5] Impracticability of performance is a strict standard that can only be invoked when the circumstances truly dictate the impracticability. *Barrett v. Ballard,* 191 Mont. 39, 44, 622 P.2d 180, 184 (1980), *followed by, 360 Ranch Corp. v. R & D Holding,* 278 Mont. 487, 493, 926 P.2d 260, 263 (1996).

■ Impracticability of performance is not invoked when, under the contract, one party assumes the risk that fulfillment of a condition precedent will be prevented. *DeCarlo and Doll, Inc. v. Dilozir,* 45 Conn.App. 633, 698 A.2d 318, 323 (1997); *Wheelabrator Envirotech Operating Services, Inc. v. Massachusetts Laborers Dist. Council Local 1144,* 88 F.3d 40, 44–45 (1st Cir.(Mass.) 1996). The obligor is expected to provide in the contract for contingencies that are foreseeable. *Downing v. Stiles,* 635 P.2d at 813; *Wichita Properties v. Lanterman,* 6 Kan. App.2d 656, 633 P.2d 1154, 1161 (1981). This is particularly true in an instance in which performance of the contract depends upon obtaining a governmental license or permit which is required. *URI Cogeneration Partners, L.P. v. Board of Governors for Higher Education,* 915 F.Supp. 1267, 1287 (D.R.I. 1996); RESTATEMENT (SECOND) OF CONTRACTS § 264 (1979). RESTATEMENT (SECOND) OF CONTRACTS § 264 (1979) refers to RESTATEMENT (SECOND) OF CONTRACTS § 266(1) (1979), and in RESTATEMENT (SECOND) OF CONTRACTS § 266, cmt. *a,* at 339 (1979), this limitation on the rule is found:

*Comment:*

*a. Relation to other rules.* * * * First, under the rules stated in this Section, the affected party must have had no reason to know at the time the contract was made of the facts on which he later relies.

■ In light of the record in this case, it is clear that the Scheers and Burnaughs agreed to obtain "the necessary BLM permits and approvals, at the expense of [Lee Ranches]." The obtaining of the permit was

a condition precedent to any duty of Lee Ranches to survey and build the resource road. Vernon Scheer testified that the Scheers and Burnaughs knew of this requirement at the time the contract was made, and the plain and unambiguous language reflects that knowledge. Any modicum of further investigation would have led to the requirement by the BLM of easement access over lands on which the connecting road existed, and Vernon Scheer testified that he understood when the contract was made that the BLM would require easements to cross private lands to connect with the BLM resource road. We hold that under this contract, the Scheers and Burnaughs assumed the risk that the BLM would not issue the necessary permits and approvals, and they should have provided for such a contingency in the contract. In the absence of such a provision, they are charged with the consequences of the refusal to issue the permit. In this regard, this situation is distinguishable from the facts in *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.*, 803 P.2d 366 (Wyo.1990), because nothing in that case indicated any anticipation that the Forest Service would refuse to make an assignment of permits.

The district court erred as a matter of law in invoking the doctrine of impracticability on these facts. Consequently, the Judgment entered in the trial court is reversed, and the case is remanded for further proceedings in accordance with this opinion.