2010 WY 92

**WESTERN MUNICIPAL CONSTRUCTION OF WYOMING, INC., Appellant (Plaintiff),**

v.

**BETTER LIVING, LLC, Appellee (Defendant).**

No. S–09–0116.

Supreme Court of Wyoming.

June 29, 2010.

Representing Appellant: Raymond W. Martin and Kristin M. Nuss of Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, WY. Argument by Mr. Martin.

Representing Appellee: Anthony Todd Wendtland of Wendtland & Wendtland, Sheridan, WY.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Western Municipal Construction (Western), challenges the district court's order granting summary judgment in favor of the Appellee, Better Living, LLC (Better Living). We will reverse and remand for entry of summary judgment in favor of Western.

## ISSUE

[¶ 2] Western states this issue:

Did the district court improperly grant summary judgment for [Better Living] by failing to review the Settlement Agreement and improperly superimposing the Project Contract's dispute procedures?

Better Living restates the issue thus:

Did the trial court properly grant Better Living's motion to dismiss Western's complaint for declaratory judgment based on Western's undisputed failure to comply with an express condition precedent in the parties' contract?

## FACTS AND PROCEEDINGS

[¶ 3] This appeal arises out of the dismissal of a Complaint for Declaratory Judgment. That complaint sought to declare the parties' rights under a settlement agreement resulting from a mediated dispute concerning a construction contract. Western is a Wyoming corporation which was the contractor for a residential infrastructure construction project in Sheridan. Better Living is a Wyoming LLC which was the owner of the project. A dispute arose concerning two items: (1) the amount of liquidated damages, for which Better Living had assessed a $345,000.00 deduction against the $1.4 million contract price, and (2) the amount due under a "Force Account" bid item. The parties agreed to mediate that dispute and eventually they reached a settlement agreement.

[¶ 4] On December 3, 2008, Western filed a Complaint for Declaratory Judgment asking the district court to review the parties' Settlement Agreement and enter an order enforcing the unambiguous language of that agreement to the effect that Better Living owed Western $250,000.00 as full and complete compensation for any and all amounts owed on the project. Western also asked that it be awarded its fees and costs for bringing this action, as provided for in the contract between the parties. Both parties filed motions for summary judgment. On May 1, 2009, the district court entered summary judgment in favor of Better Living on the bases set out in its Decision Letter filed of record on April 14, 2009.

[¶ 5] Prior to these proceedings, the parties had submitted the disputes between them to a mediator for resolution. The results of that mediation were memorialized in this agreement which was executed on September 29, 2008:

**SKEELS ST/POPLAR GROVE PHASE I STREET AND UTILITY PROJECT CONTRACT AMENDMENT TO SETTLE DISPUTES REGARDING LIQUIDATED DAMAGES CLAIMS AND FORCE ACCOUNT BID ITEM**

WHEREAS, the Parties, Better Living, LLC ("Owner") and Western Municipal Construction of Wyoming, Inc. ("Contractor") mutually desire to resolve their legal and equitable disputes arising under the above referenced Contract in the most timely and cost effective manner available to them; and

WHEREAS, the parties have participated in mediation in Casper, Wyoming, with their respective legal counsel and mediator Mark Gifford, Esq.; and

WHEREAS, the parties have agreed through mediation to settle their existing disagreements concerning amounts to be paid by Owner to Contractor under paragraph 3.2 of the June 11, 2007 Agreement for the Project and otherwise under the Project contract documents and concerning Project bid item # 145 on Schedule G of the Alternate 1 Project Contract Bid package and otherwise under the Project contract documents; and

WHEREAS, the parties desire to resolve these two items of dispute under the existing Project contract documents only as set forth herein and to otherwise go forward pursuant to the existing Project contract without any other amendments thereto.

WHEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1. Owner agrees to pay Contractor a final amount of $250,000.00 as full and complete compensation for any and all amounts owed to Contractor for work performed on the Project, including without limitation retainage and bid item amounts including Schedule G, Bid item # 145 "Force Account" work. Contractor expressly agrees to accept said amount as the proper and agreed full and final amount owed by Owner to Contractor for all "Force Account" work and materials. Contractor hereby expressly releases Owner from claims to any other or further claims concerning any "Force Account" work and materials and expressly waives and releases any claims, liens, or any similar claims against Owner or any Project property or improvements concerning liquidated damages payments or credits for delay in completion of the Project pursuant to paragraph 3.2 of the June 11, 2007 Agreement for the Project and otherwise under the Project contract documents.

2. It shall be an express condition precedent to the effectiveness and enforceability of the compromise promises set forth in paragraph 1 above that the Contractor shall cooperate in good faith with the Owner and HKM Engineering, Inc., to complete all punch list work on the Project on or before October 14, 2008 and shall otherwise comply with the Project contract requirements concerning the proper and timely application for Final Payment. If the Contractor does not complete all punch list work and submit timely, complete, proper, and fully executed Final Payment application paperwork pursuant to the Project contract, on or before October 14, 2008, then liquidated damages shall accrue at the rate of $600.00 per day as provided in the Project contract documents. Contractor will stipulate to the entry of judgment in favor of Owner and against Contractor for such liquidated damages accrual.

3. The parties' existing June 11, 2007 Project Contract shall otherwise remain in full force and effect. This agreement does not constitute any amendment of any terms in the parties' existing Project Contract other than those expressly set forth in paragraphs 1 and 2 above.

4. This agreement shall not constitute any release or waiver of any kind by any party of any rights or claims arising out of the Project Contract or the Project other than those expressly set forth in paragraphs 1 and 2 above.

5. All parties executing this agreement do so knowingly, voluntarily, and with the full advice of counsel. This agreement shall be governed by the laws of the State of Wyoming in all respects.

6. This agreement shall be binding upon and shall inure to the benefit of the respect assigns, successors, heirs, agents, employees, officers and members of the parties.

[¶ 6] The record is not clear as to the date that Western submitted its request for the final payment, but it is not disputed that it was submitted before October 14, 2008. Indeed, it had to have been submitted before October 14, 2008, because it is also undisputed that HKM Engineering, Inc., sent out a "Memorandum" to both Western and Better

Living on October 6, 2008, containing these very limited bits of information. The reference line of the memo informs us that its subject is "Poplar Grove/Skeels Street Force Account, Pay Request # 5, Final Completion":

> Enclosed please find a New Periodic Application for Progress Payment to Contractor form for Pay Request # 5. This Pay Request reflects the discussions and agreement from the September 29, 2008 mediation hearing. Please replace the pay request # 5 and Final Change Order submitted on August 29, with this pay request.

> Also, I have revised the Final Change Order for this project to include the adjustment in the Force Account amount as well as releasing $107,683.73 of liquidated dam-

ages to give a total final payment including all retainage of $250,000.00. Once the Final Change Order is signed and other required Final Completion documentation is received, we can proceed with Final Completion and issue Final Payment for this project.

> We have also in good faith started the required advertisement for this project as soon as possible. The attached advertisement document was first published Saturday, October 4, and if all Contract requirements are met, states a final payment date of November 14th, 2008.

> Please contact me if you have any questions with this final pay request and change order, or any of the other documentation required for Final Completion.

**Skeels Street/Poplar Grove Phase I Streets and Utilities Pay Estimate # 5**

**Force Account Work through Pay Estimate # 5**

| Item | Cost | Pay Request | Description |
|---|---|---|---|
| Rock Excavation | $ 447.32 | # 2 | Rock excavation needed or Phase I sanitary sewer line. |
| Dry Utility Conduits at entrance to subdivision | $ 6,520.00 | # 4 | Conduits installed across subdivision entrances. |
| Dry Utilities | $33,086.12 | # 4 | Dry Utilities installed from 2-25-08 to 4-22-08. |
| Additional to Dry Utilities | $ 4,120.84 | # 5 | Added after review of WMC and HKM documentation. |

Final Payment Reconciliation

| | |
|---|---|
| Total Retainage withheld on this project (includes retainage from PR# 5 work) | $138,607.51 |
| Work done on Pay Request # 5 (minus retainage for PR # 5 work) | $ 3,708.76 |
| Liquidated Damages back to WMC | $107,683.73 |
| Final payment Amount | $250,000.00 |
| Retainage previously released | $ 54,999.32 |
| Full and final payment for PR# 5 | $195,000.68 |

[¶ 7] The crux of the dispute at hand is the "Retainage previously released" item included in Pay Estimate # 5. Western said that sum was encompassed in the mediation process and could not be deducted from the $250,000.00 settlement amount. Better Living takes the opposite position. Western also contends that the materials in the record of this case describe "Retainage previously released" as "what had been paid prior to the mediation," and that that was not a matter discussed at the mediation. What is meant by "Force Account" work is not discussed other than to use those words. However, that phrase usually refers to change order work. See 2 *Bruner & O'Connor on Construction* § 6:84 (2010); *Wayne Knorr, Inc. v. Department of Transportation*, 973 A.2d 1061, 1066, fn. 1 (Pa.Comm.2009) also see pages 28–29 of the Standard General Conditions of the Construction Contract.

[¶ 8] On October 29, 2008, it is undisputed that Western sent this e-mail to Better

Living: "Per the settlement agreement, if you will refer to Paragraph 1 and Paragraph 3, the final settlement amount is $250,000.00. If you do not agree with that we will have to go back to the attorneys and mediator for clarification...."

[¶ 9] If there were any further communications between the parties about this disagreement, they are not a matter of record. However, on December 3, 2008, Western filed a "Complaint for Declaratory Judgment" seeking to enforce the exact terms of the September 29, 2008 agreement, which is set out in detail above. On January 6, 2009, Better Living filed a motion to dismiss or in the alternative for summary judgment. Western then filed a response containing about the same contentions that we are called upon to address in this appeal. The district court opted to dismiss Western's complaint after noting that the parties agreed there were no genuine issues of material fact and that Better Living was entitled to judgment as a matter of law because Western had not complied with "the condition precedent prerequisite to a right to sue and is therefore barred from seeking judicial relief for their claim."

## DISCUSSION

### Standard of Review

[¶ 10] When we review a summary judgment, we have before us the same materials as did the district court, and we follow the same standards which applied to the proceedings below. The propriety of granting a motion for summary judgment depends upon the correctness of the district court's dual findings that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law. *Reed v. Miles Land and Livestock Co.*, 2001 WY 16, ¶ 9, 18 P.3d 1161, 1163 (Wyo. 2001). Moreover,

> Our primary focus in construing or interpreting a contract is to determine the parties' intent, and our initial inquiry centers on whether the language of the contract is clear and unambiguous. If the language of the contract is clear and unambiguous, then we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the contract. *Wolter v. Equitable Resources Energy Company*, 979 P.2d 948, 951 (Wyo.1999). Common sense and good faith are leading precepts of contract construction. *Polo Ranch Company v. City of Cheyenne*, 969 P.2d 132, 136 (Wyo.1998). The interpretation and construction of contracts is a matter of law for the courts. *Mathis v. Wendling*, 962 P.2d 160, 163–64 (Wyo.1998).

*Id.*

[¶ 11] When we apply these principles to the contract dispute at hand, we conclude that the language of the settlement agreement is unambiguous and the language of the underlying "Standard Conditions of the Construction Contract" need not, and should not, be consulted in construing the language of the settlement agreement. Superimposing a requirement here that, if Western objected to receiving a payment for less than $250,000.00, then it must make that claim in accordance with Article 10.05 of the construction contract defies the purpose and intent of the settlement agreement and it adds words to that agreement which have the effect of nullifying it. Our precedents guide us in resolving the scope of the instant settlement agreement:

> This Court has on several occasions addressed the theory of "compromise and settlement." In *Parsley v. Wyoming Automotive Co.*, 395 P.2d 291, 295 (Wyo.1964), we described the general rule of compromise and settlement as being "that the settlement of a bona fide dispute or a doubtful or unliquidated claim, if made fairly and in good faith, is a sufficient consideration for a compromise based thereon." We have defined a compromise as " 'an agreement between two or more persons who, to avoid a lawsuit, amicably settle their differences on such terms as they can agree on.' " *Peters Grazing Ass'n v. Legerski*, 544 P.2d 449, 456 n. 3 (Wyo. 1975) (quoting 15A C.J.S. *Compromise and Settlement* § 1 at 170). A settlement agreement is a contract and, therefore, subject to the same legal principles that apply to any contract. *In re Estate of*

*Maycock,* 2001 WY 103, ¶ 10, 33 P.3d 1114, 1117 (Wyo.2001); *Matter of Estate of McCormick,* 926 P.2d 360, 362 (Wyo.1996). The elements are the same as the elements of any contract: offer, acceptance, and consideration, and establishment of the existence of these elements leads courts to conclude that mutual assent has occurred. *Matter of Estate of McCormick,* 926 P.2d at 362. A compromise and settlement agreement is, also like other contracts, subject to construction as a matter of law. *Ludvik v. James S. Jackson Co., Inc.,* 635 P.2d 1135, 1143 (Wyo.1981).

> *A contract made in settlement of claims is valid even if the claims settled are of doubtful worth....This means that this court will not look behind a settlement agreement to see who would have prevailed in a dispute out of which the settlement agreement arises. If the settlement agreement itself meets contractual requirements, it will be enforced.*

*Kinnison v. Kinnison,* 627 P.2d 594, 596 (Wyo.1981).

*Mueller v. Zimmer,* 2005 WY 156, ¶ 18, 124 P.3d 340, 350 (Wyo.2005) (emphasis in original).

## CONCLUSION

[¶ 12] We conclude that the district court erred in failing to order Better Living to comply with the settlement agreement. We are also not persuaded by Better Living' contentions that by cooperating in executing the closeout documents, Western thereby waived its entitlement to the $250,000.00 settlement amount or that it thereby ratified Better Living's efforts to unilaterally modify the settlement agreement. Western was entitled to a payment in the amount of $250,000.00. If there are other disputes Better Living saw in this case, it was the one burdened with filing a claim, which it did not do. The district court's order is reversed and this matter is remanded to the district court for entry of an order consistent with this opinion. Western is also entitled to the fees and costs due it under W.R.A.P. 10.04.