**THIRD DIVISION
MIKELL, P. J.,
MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**June 21, 2012**

# In the Court of Appeals of Georgia

A12A0019. MOUNTAIN HERITAGE BANK v. ROGERS.

MILLER, Judge.

In this breach of contract action, Jerry Rogers sued Mountain Heritage Bank ("the Bank") to recover full severance pay under the provisions of his employment contract. Rogers and the Bank filed cross motions for summary judgment regarding the enforceability of the severance pay provisions. The trial court granted Rogers's motion and denied the Bank's motion, finding that Rogers was entitled to the payment of full severance pay as provided under the employment contract. The Bank appeals, contending that the trial court's decisions were erroneous since the severance pay amounted to a "golden parachute payment" barred by federal banking

regulations.[1] For the reasons that follow, we agree and reverse the trial court's decision.

> On appeal from a trial court's grant of summary judgment, this Court conducts a de novo review of the evidence. To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

---

[1] The Bank also contends that the trial court erred in failing to find that a jury question existed on the issue of accord and satisfaction since Rogers had accepted one month of severance pay. In light of our conclusion that the Bank was entitled to summary judgment in its favor based upon the evidence establishing that the severance pay fell within the federal regulatory definition of a "golden parachute payment," we need not reach this alternative ground.

We further note that Rogers's breach of contract claim was a state-law claim. Although the Bank's defense involved a determination of the applicability of the federal regulatory scheme set forth in 12 C.F.R. § 359.0 et seq., removal of the case to federal court was not required and jurisdiction in the state trial court was proper. See *Hester v. Fla. Capital Group*, Case No. 8:11-cv-791-T-24-TGW, 2011 U.S. Dist. LEXIS 69661, at * 6-15 (II) (A), (B) (M.D. Fla. June 29, 2011) (ruling that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"; the federal regulations governing golden parachute payments do not completely preempt state law claims and do not prohibit bank employees from seeking assistance in state courts to resolve disputes underlying their employment contracts).

2

(Citations and punctuation omitted.) *World Championship Wrestling v. City of Macon*, 229 Ga. App. 248, 248-249 (493 SE2d 629) (1997).

So viewed, the evidence shows that on February 3, 2004, Rogers became employed as the Bank's senior vice president. The employment agreement entered into between the Bank and Rogers pertinently provided that if Rogers's employment was terminated without cause, "[Rogers] shall be paid severance compensation in an amount equal to his annual [b]ase [s]alary . . . then in effect[,] which shall be paid over a twelve (12)-month period[.]"

In June 2009, the Federal Deposit Insurance Corporation ("FDIC") issued a cease and desist order against the Bank in accordance with 12 U.S.C. § 1818 (b) (1), based upon certain "unsafe or unsound banking practices and violations of law and/or regulations alleged to have been committed by the Bank" pertaining to its operations, loans, and assets. The cease and desist order designated the duties required of the Bank's board of directors and management to bring the Bank into compliance with banking regulations.

On or about June 21, 2010, Rogers's employment with the Bank was terminated without cause due to a "[r]eduction in staffing[.]" The Bank's president informed Rogers that in light of the Bank's troubled status, Rogers would be paid

3

severance only through the end of the next month. The Bank claimed that the severance pay provided in Rogers's employment contract amounted to a golden parachute payment, which the Bank was prohibited from making under the FDIC regulations set forth in 12 CFR § 359 et seq.

The Bank's president nevertheless agreed to make inquiry as to whether the Bank could pay a greater severance as contemplated under the employment contract. The Bank submitted an application to the FDIC regional director, requesting consent for payment of the golden parachute payment in accordance with 12 C.F.R. § 303.244 (b), (c). The FDIC regional director returned the Bank's application, finding that it failed to meet the minimum regulatory requirements for consent to be given.

Rogers filed suit against the Bank to recover the full amount of severance pay provided under the employment contract. The trial court granted summary judgment in Rogers's favor, finding that Rogers was entitled to recover based upon the clear terms of the employment contract and the absence of evidence that the severance payment was barred by the federal regulations.

The Bank contends that the trial court erred in ruling in Rogers's favor since the severance pay provided under the terms of the employment contract amounted to a prohibited golden parachute payment. We agree that the severance pay at issue was

4

prohibited as a golden parachute payment as defined under the federal banking regulations.

The evidence establishes that the Bank was subject to a cease-and-decease order issued by the FDIC, and thus, was considered to be in troubled condition. See 12 C.F.R. § 303.101 (c) (3). Troubled banks are generally prohibited from making golden parachute payments without the consent of the appropriate federal banking agency and the written concurrence of the FDIC. See 12 C.F.R. § 359.0; 12 C.F.R. § 303.244 (a); see also 12 U.S.C. § 1828 (k); *Howell v. Federal Deposit Ins. Corp.*, 986 F.2d 569, 574, n. 4 (1st Cir. 1993) (noting that the FDIC "may prohibit or limit, by regulation or order, any golden parachute payment.") (punctuation omitted). The term "golden parachute payment" is pertinently defined in 12 C.F.R. § 359.1 (f) (1) as

> any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution [hereinafter "bank"] . . . that:
>
> (i) Is contingent on, or by its terms is payable on or after, the termination of such party's primary employment or affiliation with the [bank]; and
>
> (ii) Is received on or after, or is made in contemplation of . . .

5

(C) A determination by the [bank's] appropriate federal banking agency, respectively, that the [bank] is in a troubled condition, as defined in the applicable regulations of the appropriate federal banking agency (§ 303.101(c) of this chapter); . . . and

. . .

(iii)(B) Is payable to an IAP whose employment by or affiliation with [a bank] is terminated at a time when the [bank] by which the IAP is employed or with which the IAP is affiliated satisfies . . . the condition[] enumerated in paragraph[] (f)(1)(ii) [(C)] of this section, or in contemplation of . . . [this] condition[].

(Punctuation omitted.) See also 12 C.F.R. § 359.0 (b) ("A 'golden parachute payment' is generally considered to be any payment to an IAP which is contingent on the termination of that person's employment and is received when the [bank] making the payment is troubled[.]"). In turn, 12 C.F.R. § 359.1 (h) (1) defines "IAP," or Institution-affiliated party, as "[a]ny director, officer, employee, or controlling stockholder (other than a depository institution holding company) of, or agent for, [a bank.]"

Here, the undisputed evidence established that Rogers was the Bank's senior vice president. As such, Rogers met the definition of an IAP under 12 C.F.R. § 359.1 (h) (1) and as referred to in the golden parachute payment definition set forth in 12

C.F.R. § 359.1 (f) (1) (iii) (B). The undisputed evidence further established that the severance pay was payable after Rogers's employment terminated and would be received when the Bank was in a troubled status. As such, the severance pay contemplated under Rogers's employment agreement fell within the definition of a prohibited golden parachute payment. See 12 C.F.R. § 359.1 (f) (1) (i), (ii) (C), iii, (B); see also *Harrison v. Ocean Bank*, Case No. 10-23138-CIV-MORENO, 2011 U.S. Dist. LEXIS 70831, at * 2-7 (I), (II), 14-15 (VI) (S.D. Fla. June 29, 2011) (upholding the FDIC's determination that the troubled bank's agreement to pay a terminated bank officer settlement money was a prohibited golden parachute payment).

While golden parachute payments are generally prohibited, 12 C.F.R. § 303.244 (a) allows such payments when consent is obtained from the appropriate federal banking agency and the FDIC. See, e.g., *McCarron v. FDIC*, 111 F3d 1089, 1096 (III) (3d Cir. 1997) (an applicant must meet the requirement that the appropriate federal banking agency and the FDIC consent in writing to the amount and terms of the golden parachute payment pursuant to 12 C.F.R. § 359.4). To obtain consent, an application must be submitted to the FDIC regional director with certain designated information, including "[t]he cost of the proposed payment and its impact on the institution's capital and earnings; [t]he reasons why the consent to the payment

should be granted; and [c]ertification and documentation as to each of the points cited in § 359.4(a)(4)." (Punctuation omitted.) 12 C.F.R. § 303.244 (b), (c)(4)-(6). In turn, 12 C.F.R. § 359.4 (a) (4) (ii) requires the applicant to demonstrate that there is no reasonable basis to believe that the IAP or bank officer is substantially responsible for the bank's troubled condition.

Although the Bank filed an application to the FDIC regional director seeking consent for payment of the severance, its application stated that it could not advocate for consent to make the payment or make the certifications required under 12 C.F.R. § 359.4 (a) (4) since it believed that "[Rogers's] performance as a loan officer did cause him to be substantially responsible for the Bank's troubled condition." In light of the Bank's position, the FDIC regional director returned the application for failure to meet the minimum regulatory requirements.

Based upon the foregoing, the evidence of record establishes that the severance pay fell within the definition of a prohibited golden parachute payment and that the FDIC did not consent to the golden parachute payment. Under these circumstances, the Bank was prohibited from paying the severance pursuant to the federal regulations. See, e.g., *McCarron*, supra, 111 F3d at 1096 (III) (since the bank executive never obtained the requisite consent from the FDIC, there was no factual

8

or legal basis to permit payment of the bank executive's severance claims under the FDIC rules governing golden parachute payments); *Clark v. Carver Fed. Sav. Bank*, 297 AD2d 599 (N.Y. App. Div. 2002) (concluding that the bank president could not recover severance benefits provided by his employment agreement following his termination since the troubled bank was unable to make the certification required under 12 C.F.R. § 359.4 (a) (4) to obtain the supervising bank agency's consent for the golden parachute payment). The trial court therefore erred in granting summary judgment in favor of Rogers and denying summary judgment to the Bank. Since the evidence established that the Bank was entitled to summary judgment in this case, we remand for the trial court's entry of a summary judgment order in the Bank's favor.

*Judgment reversed and case remanded with instruction. Mikell, P. J., and Blackwell, J., concur.*