FILED
United States Court of Appeals
Tenth Circuit

October 4, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOE F. MARTINEZ,

      Plaintiff-Appellant,

v.

ROCKY MOUNTAIN BANK, a
Wyoming banking corporation; ROCKY
MOUNTAIN CAPITAL, a Wyoming
corporation,

      Defendants-Appellees.

No. 11-8076
(D.C. No. 2:10-CV-00245-NDF)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

Joe F. Martinez, a former president and regional vice-president of Rocky

Mountain Bank and Rocky Mountain Capital (collectively, "Bank"), sued the Bank to

recover his severance pay. The Bank settled but later refused to pay under the terms

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of the settlement agreement because federal regulators deemed the payment a prohibited "golden parachute."  Mr. Martinez asked the district court to enforce the agreement anyway, but the court denied his motion and granted in part the Bank's motion for a judgment of impracticability, excusing the Bank's duty to perform under the settlement agreement.  The court then entered a Rule 54(b) certification, *see* Fed. R. Civ. P. 54(b), and Mr. Martinez appealed.  We affirm.  We also deny the Bank's request to seal documents contained in the appendix and supplemental appendix.

I

The Federal Deposit Insurance Act authorizes the FDIC to regulate certain severance payments called "golden parachutes."  12 U.S.C. § 1828(k).  Relevant here, a golden parachute is a payment made by a troubled bank ("insured depository institution") to a former employee ("institution-affiliated party") on or after the date the employee is terminated.[1]  "Troubled banks are generally prohibited from making

---

[1]  12 U.S.C. § 1828(k)(4)(A) defines a "golden parachute" as:

> [A]ny payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution or covered company for the benefit of any institution-affiliated party pursuant to an obligation of such institution or covered company that –
> > (i) is contingent on the termination of such party's affiliation with the institution or covered company; and –
> > (ii) is received on or after the date on which –
> > > . . . .

(continued)

golden parachute payments without the consent of the appropriate federal banking agency and the written concurrence of the FDIC." *Mountain Heritage Bank v. Rogers*, 728 S.E.2d 914, 916 (Ga. Ct. App. 2012); *see also* 12 C.F.R. § 359.2; *id.* § 359.4(a)(1). It is undisputed that the Bank is an "insured depository institution," *see* 12 C.F.R. § 359.1(g), and that, as a former senior Bank officer, Mr. Martinez is an "institution-affiliated party" ("IAP"), *see id.*, § 359.1(h).

In 2007, the Bank hired Mr. Martinez under an employment contract providing for an annual base pay of $200,000 plus bonuses and stock options. His contract also provided for a severance package of one year's base pay if he was terminated without cause. On June 14, 2010, the Bank was notified by its primary regulator, the Federal Reserve Board ("Federal Reserve") that it was in a "troubled condition" as defined by 12 C.F.R. § 225.71(d). That designation triggered the regulatory prohibition on golden parachute payments. Shortly thereafter, on September 23, 2010, Mr. Martinez was terminated by the Bank. He was told at that time that the Federal Reserve and FDIC prohibited the severance package promised to him in his employment contract.

Mr. Martinez responded with this lawsuit for breach of contract, breach of the implied covenant of good-faith and fair dealing, and violation of Wyoming's Unpaid Wages Act, Wyo. Stat. Ann. §§ 27-4-101 to -116. According to the complaint, Mr. Martinez was entitled to "[s]everance compensation in the amount of $200,000,"

---

(III) the institution's appropriate Federal banking agency determines that the insured depository institution is in a troubled condition . . . .

- 3 -

Aplt. App. at 15, which he characterized as "wages in the form of severance pay," *id.* at 20.  The parties entered into negotiations, and on December 8, 2010, the Bank sent a draft settlement agreement to Mr. Martinez.  In the accompanying email, the Bank alerted Mr. Martinez it was seeking approval from the Federal Reserve to make the proposed settlement, which was "contingent upon [Federal Reserve] authorization." Aplt. App. at 442.  During that same month, the Bank's new CEO, Terry Earley, had multiple conversations with regulators at the Federal Reserve, attempting to obtain their approval.  The parties eventually reached an agreement requiring the Bank to pay Mr. Martinez $100,000 in exchange for his release of his claims.  On January 6, 2011, the Bank sent Mr. Martinez a final settlement agreement, with the stipulation that he amend his complaint to remove any reference to severance pay.  Mr. Martinez amended his complaint accordingly, and the Bank sent the amended complaint to the Federal Reserve.  The Bank also sent the Federal Reserve a risk analysis assessing the Bank's liability.  On January 10, Mr. Martinez executed the settlement agreement, making it enforceable under its express terms.  The Federal Reserve still had not approved the payment.

The next month, the Bank wrote a letter to the Federal Reserve asking it to issue a "non-objection" to the settlement payment.  Aplt. App. at 377.  On March 11, 2011, Stephen Meyer, assistant general counsel to the Board of Governors of the Federal Reserve System in Washington, D.C., responded to the Bank by letter ("Meyer letter").  The Meyer letter stated that the $100,000 payment was in fact a

prohibited golden parachute under 12 U.S.C. § 1828(k) and 12 C.F.R. § 359.2. The Meyer letter informed the Bank that it could seek an exception to these restrictions, but doing so would require the Bank or Mr. Martinez to certify that they neither possessed nor were aware of any information indicating that Mr. Martinez was substantially responsible for the Bank's troubled condition. *See* 12 C.F.R. § 359.4(a)(4)(ii). The Bank could not make this certification, however, because Mr. Earley had already discovered that Mr. Martinez was involved in originating risky loans that resulted in significant losses for the Bank.

Mr. Martinez thus reinstated his claims for severance pay in a second amended complaint and moved the district court to enforce the settlement agreement. For its part, the Bank moved for a legal determination of impracticability, arguing that it could not legally make the payment due to the regulatory prohibitions.

In two separate orders, the district court denied the motion to enforce the settlement agreement and later granted in part the Bank's motion for a determination of impracticability.[2] The court first concluded that an enforceable contract existed, but that the Bank's obligation to perform had not become due because the Federal Reserve had refused to authorize the payment. Then, to determine whether the Bank had taken reasonable steps to obtain that authorization, the court held an evidentiary hearing. It found that the Bank had acted in accord with its contractual obligations,

---

[2] The court denied the Bank's motion to the extent it sought a determination of impracticability for its obligations under Mr. Martinez's employment contract. We express no opinion on that ruling.

including the covenant of good faith and fair dealing, but its performance was impeded by a supervening impracticability—the Federal Reserve's refusal to authorize the payment. Thus, the court ruled that the Bank's performance under the settlement agreement was excused by the non-occurrence of a condition precedent. After the court entered its Rule 54(b) certification, this appeal followed.[3]

## II

On appeal, Mr. Martinez advances three arguments, although not in this order. First, he contends the district court erred in interposing a condition precedent to the settlement agreement. Second, he challenges the court's finding of impracticability, which he says relied solely on inadmissible hearsay. And third, Mr. Martinez asserts his settlement payment falls within an exception to the golden parachute restrictions. We consider these arguments in turn.

### A. Settlement Agreement

We review the district court's refusal to enforce the settlement agreement for an abuse of discretion. *See Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013). "Because settlement agreements are contracts, issues involving the formation and construction of a purported settlement agreement are resolved by

---

[3] The court certified its judgment under Rule 54(b) and 28 U.S.C. § 1292(b), though Mr. Martinez made no application to appeal pursuant to § 1292(b). In accord with Rule 54(b), the court entered a final judgment, finding no just reason for delay. This certification was proper because the denial of the settlement agreement extinguished Mr. Martinez's remedies under that contract, leaving him to seek relief on the "distinct and separable" claims alleged in his second amended complaint. *See Jordan v. Pugh*, 425 F.3d at 820, 826 (10th Cir. 2005).

applying state contract law." *Id.* (internal quotation marks and brackets omitted). In Wyoming, mutual assent to a settlement agreement is established by an offer, acceptance, and consideration. *W. Mun. Constr. of Wyo., Inc., v. Better Living*, LLC, 234 P.3d 1223, 1227-28 (Wyo. 2010).

Mr. Martinez first argues that the district court erred in interposing a condition precedent to the Bank's obligation to perform under the settlement agreement. He says there is no mention of a condition in the settlement agreement and parol evidence should not have been used to establish one. He further argues that he never assented to any condition precedent and that if the need for regulatory authorization was foreseeable, it should have been incorporated into the settlement agreement.

The underlying flaw in these arguments, however, is the false premise that the parties could assent to the regulations. Unlike other cases in which the validity of the condition precedent turns on the parties' assent, *see, e.g., Lewis v. Roper*, 579 P.2d 434, 439 (Wyo. 1978), the condition here—the Federal Reserve's approval—was imposed by regulatory mandate, *see* 12 C.F.R. § 359.2; *id.* § 359.4(a)(1). Thus, the parties had no choice but to submit to the golden parachute regulations and obtain the Federal Reserve's authorization, regardless of Mr. Martinez's assent.

Of course, the parties could have provided for this foreseeable contingency in their contract, but the absence of any express provision does not suggest the Bank assumed the risk that the Federal Reserve would deny authorization. Mr. Martinez insists the Bank was "expected to have provided for any foreseeable contingencies in

the controlling contract." Aplt. Br. at 22, citing *Mortenson v. Scheer,* 957 P.2d 1302, 1306 (Wyo. 1998). But *Mortenson* is distinguishable. The obligors in that case expressly "agreed they would obtain the necessary [government] permits and approvals," yet they failed to do so and failed to include any provision in the contract for that contingency. *Id.* at 1304, 1307 (internal quotation marks omitted). Here, by contrast, the settlement agreement did not obligate the Bank to obtain the Federal Reserve's approval. And the regulations enabled either the Bank or Mr. Martinez to seek the required authorization. *See* 12 C.F.R. § 359.4(a)(4). Consequently, we cannot say the Bank was solely responsible for satisfying the condition precedent and assumed the risk of failing to do so by omitting any provision for that contingency in the contract.[4]

Still, Mr. Martinez contends that because there is no mention of a condition precedent in the settlement agreement, no condition precedent should apply. But the evidence before the district court clearly established that both parties knew the settlement agreement was subject to the Federal Reserve's approval. Indeed, the Bank's December 8 email to Mr. Martinez expressly stated that the proposed

---

[4] This is not to say the Bank had no obligation to seek the Federal Reserve's approval. Although the settlement agreement did not require the Bank to obtain the Federal Reserve's approval, the Bank was still duty bound by the implied covenant of good faith and fair dealing to seek the required authorization. *See Scherer Constr., LLC v. Hedquist Constr., Inc.*, 18 P.3d 645, 653 (Wyo. 2001) ("Compliance with the obligation to perform a contract in good faith requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party.").

settlement was "contingent upon [Federal Reserve] authorization" and that "the Bank will not execute the agreement until such time as the [Federal Reserve] gives us the green light." Aplt. App. at 442. Additionally, Mr. Earley testified that the parties agreed that Mr. Martinez "would amend [his] complaint to delete the severance claim and that it would be settled for $100,000 subject to approval by the regulators to allow that payment." *Id.* at 274. Consistent with this testimony, the Bank emailed the final agreement to Mr. Martinez on January 6, 2011, with the stipulation that he remove from his complaint all references to severance pay, and Mr. Martinez amended his complaint accordingly the next day. This demonstrates that both parties knew there was an existing condition precedent. Mr. Martinez protests the use of this parol evidence, but Wyoming law allows parol evidence to establish conditions precedent, *see Belden v. Thorkildsen*, 156 P.3d 320, 324 (Wyo. 2007). Thus, the court did not err in finding a condition precedent to the Bank's duty to perform.

### B. *Impracticability and the Meyer Letter*

We next consider whether it was impracticable for the Bank to make the settlement payment. "Impracticability of performance is a legal justification or excuse for nonperformance of a contractual obligation." *Central Kan. Credit Union v. Mutual Guar. Corp.*, 102 F.3d 1097, 1102 (10th Cir. 1996) (citing Restatement (Second) of Contracts § 261 (1981)). "After a contract is made, if a party's performance is made impracticable by the occurrence of an event, the nonoccurrence of which was a basic assumption upon which the contract was made, that party is

relieved of the obligation." *Id.* The dispositive principle is § 264 of the Restatement, which provides:

> If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made.

Restatement (Second) Contracts § 264 (1981).

The Meyer letter established that the Federal Reserve refused to authorize the settlement payment as a prohibited golden parachute. This excuses the Bank's obligation to perform. *See Whitlock Constr., Inc. v. S. Big Horn Cnty. Water Supply Joint Powers Bd.*, 41 P.3d 1261, 1267 (Wyo. 2002) (excusing parties' performance because contingency of state approval did not occur). Mr. Martinez maintains that the Meyer letter is inadmissible hearsay, but the letter was not hearsay at all. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). The Meyer letter was not admitted to show the propriety of the Federal Reserve's decision, but to show that the Federal Reserve refused to authorize the payment. Under these circumstances, the letter was not hearsay, and the Bank's performance was excused under the doctrine of impracticability.

### C. *Exceptions to the Golden Parachute Restrictions*

We turn then to Mr. Martinez's contention that the settlement payment is excepted from the golden parachute restrictions. Mr. Martinez argues that under 12 C.F.R. § 359.1(f)(2), his settlement was excluded from the golden parachute

- 10 -

restrictions as either non-discriminatory severance pay, *see id.* § 359.1(f)(2)(v), or pay owed to him under state law, *see id.* § 359.1(f)(2)(vi). The problem with this argument, however, is that Mr. Martinez either waived or forfeited it by failing to raise it in the district court. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011) (holding that legal theories advanced for the first time on appeal are waived if omitted intentionally or forfeited if omitted through neglect).

In the district court, Mr. Martinez did not argue that his settlement payment fell under an enumerated exception to the golden parachute regulations. Instead, he argued that the settlement agreement was enforceable without regard to the golden parachute regulations. He urged the court to consider only the four corners of the contract and asserted that if regulators wanted to invoke the regulations to stop the payment, they should intervene, establish standing, and either object to the entry of judgment or wait until he attempted to execute on the judgment. *See* Aplt. App. at 139-40, 168. Then at the evidentiary hearing, Mr. Martinez repeatedly objected to evidence suggesting that the golden parachute regulations barred his payment. *See, e.g., id.* at 239-40 (objecting to the Meyer letter and the June 14, 2010 notice from Federal Reserve that Bank was in a "troubled condition"); *id.* at 291 (arguing that the Meyer letter should be stricken). Although the Bank responded that the evidence was relevant to establish the impracticability of its performance, not the propriety of the Federal Reserve's application of the golden parachute regulations, *see id.* at 317-18, Mr. Martinez insisted the evidence was unreliable, *see id.* at 314 (arguing that

Mr. Meyer should be subject to cross-examination to show "why . . . [his] opinion may not be supported by foundation or may be incorrect").

The district court clarified that it was not reviewing the Federal Reserve's application of the golden parachute regulations, let alone any of the exceptions now invoked by Mr. Martinez. As the court explained:

> [T]he issue here is not a review of agency action. We're not here to ascertain whether the Federal Reserve [Board's] decision was arbitrary, capricious or not adequately supported. We are here to inquire into the efforts of Rocky Mountain Bank, both past and current, in terms of meeting its burden to show that their – that they have impracticability or impossibility available to them as a defense.

*Id.* at 319. Moreover, the court's recognition that the golden parachute restrictions applied was predicated not on its own independent analysis of the regulations but on the Federal Reserve's June 14, 2010, notice that the Bank was in a troubled condition. Indeed, as the court observed:

> One effect of the "troubled condition" determination is that [the Bank] was "generally prohibited from making, or entering into an agreement to make, a severance payment to any officer, director, or employee without the prior written approval of the [Federal Reserve] and the Federal Deposit Insurance Corporation [FDIC].

*Id.* at 197 (quoting the Federal Reserve's June 14, 2010, notice). Although the court noted the specific regulatory exceptions Mr. Martinez now relies upon, the court never evaluated those exceptions because Mr. Martinez never invoked them.

The only exception the court did consider was whether the Bank or Mr. Martinez might have sought authorization under 12 C.F.R. § 359.4(a)(4) if either of them could have certified that Mr. Martinez was not substantially responsible for

the Bank's troubled condition. But the evidence demonstrated that the Bank had conducted a good-faith inquiry into whether it could make the required certification and had appropriately concluded that it could not. And since there was no evidence that Mr. Martinez had attempted to make the required certification himself, the court recognized that § 359.4(a)(4) was not available. Apart from this provision, the court did not consider any other exceptions because Mr. Martinez did not raise them. Accordingly, we decline to consider in the first instance whether Mr. Martinez's settlement payment falls under an exception to the golden parachute restrictions.

### D. Bank's Request to Seal

Finally, we consider the Bank's request to seal Volume One of the supplemental appendix, as well as other documents in the main appendix. The Bank submitted Volume One of the supplemental appendix under seal, but the clerk directed the Bank to show cause why these documents should remain under seal given our presumption in favor of public access. In response, the Bank claims the materials are protected from public disclosure under the bank examination privilege. *See In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995). Moreover, the Bank says the same privilege applies to certain documents in the main appendix. Although the Bank does not specify which documents in the main appendix should be sealed, it appears that the Bank seeks to protect from public disclosure any documents that were sealed in the district court, including the parties' briefs on the motion to enforce the settlement agreement; the Bank's motion for a judgment of impracticability; the

- 13 -

court's order granting a judgment of impracticability; and the court's Rule 54(b) certification. The district court sealed these and other documents, as well as the evidentiary hearing transcripts.

Mr. Martinez objects to the sealed volume of the supplemental appendix. He says it contains hearsay evidence that should not have been submitted to the district court and was not considered by the district court. Consequently, Mr. Martinez asks that we strike Volume One of the supplemental appendix.

We deny the Bank's request to seal any of the materials in either the supplemental appendix or the main appendix. The Bank has not shown that its interests in protecting regulatory communications or matters potentially detrimental to its business "outweigh the public interests in access" to the judicial records. *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012). And because the sealed volume of the supplemental appendix has no impact on our disposition, we grant Mr. Martinez's request to strike Volume One of the supplemental appendix and direct the clerk to return those materials to the Bank.

### III

The judgment of the district court is affirmed. The Bank's request to seal Volume One of the supplemental appendix and portions of the main appendix is

denied.  Volume One of the supplemental appendix is stricken, and the clerk is directed to return that volume to the Bank.

Entered for the Court


David M. Ebel
Circuit Judge