KAUTZ, Justice.
[¶1] Appellant, Action Snowmobile & RV, Inc. (Action), filed a complaint against Appellees, Most Wanted Performance, LLC and one of its owners, Trevor Eva (collectively referred to as Most Wanted), regarding the circumstances under which Most Wanted purchased Action. Action brought claims of fraud, negligent misrepresentation, conversion, and civil conspiracy. The district court granted summary judgment in favor of Most Wanted on all claims. Action appeals the district court's decision. We affirm.
ISSUES
[¶2] In this appeal, Action has raised six issues which can be condensed into the following four:
1. Did the district court err when it granted summary judgment in favor of Most Wanted on Action's fraud claim?
2. Did the district court err when it granted summary judgment in favor of Most Wanted on Action's negligent misrepresentation claim?
3. Did the district court err when it granted summary judgment in favor of Most Wanted on Action's civil conspiracy claim?
4. Did the district court err when it granted summary judgment in favor of Most Wanted on Action's conversion claim?
FACTS
[¶3] Action was the only licensed Polaris snowmobile dealership in Teton County, Wyoming, and was run by its president, Shaun King. Most Wanted was a competitor company in Jackson, and while it did not sell snowmobiles, it offered maintenance service for snowmobiles and after-market add-ons and accessories. Most Wanted hoped to sell snowmobiles in the future and had called Polaris to inform the company of its interest. Although Polaris told Most Wanted it could not offer it a dealership, Mr. Eva was certain Mr. King and Action would eventually lose the Polaris license due to mismanagement.
[¶4] There were hard feelings between Mr. King and the owners of Most Wanted, much of which revolved around a performance part developed by Most Wanted that solved a recurring problem on Polaris snowmobiles. Mr. King and another one of his entities, Redneck Racing, had previously sued Most *320 Wanted, claiming ownership of the performance part. According to Mr. Eva, Mr. King and Redneck Racing ended up losing the lawsuit that has become known as the "Redneck litigation."
[¶5] In November 2012, a company called CW Buffalo Partners, LLC (CW Buffalo) (owned by Dave Willis and Kevin Donovan) contacted Action and expressed interest in managing Action. On January 23, 2013, Action (through Mr. King) executed an Asset Purchase Agreement and a Management Agreement with CW Buffalo. On March 15, 2013, CW Buffalo and Action sold Action to Most Wanted for $234,000. The sale was memorialized with an Agreement for the Purchase and Sale of Assets and was signed by Mr. King and Mr. Willis on behalf of Action and CW Buffalo. On March 27, 2013, Action, Most Wanted and Polaris executed a Transfer and Assumption Agreement, which transferred Action's Polaris inventory to Most Wanted.
[¶6] In September 2014, Action filed a complaint against CW Buffalo, accusing CW Buffalo of fraud, negligent misrepresentation, and conversion during the 2013 transactions involving Action, CW Buffalo and Most Wanted. That lawsuit has been resolved, although the final outcome is not found in the record. Thereafter, Action filed a complaint against Most Wanted for fraud, negligent misrepresentation, civil conspiracy, and conversion relating to the same transactions. Generally, Action alleged that CW Buffalo and Most Wanted worked together to fraudulently convince Mr. King to sell Action so that Most Wanted could have the Polaris dealership.
[¶7] Most Wanted filed a motion for summary judgment, arguing no facts existed to support the claims in Action's complaint. In support of the motion, Most Wanted attached Mr. Eva's affidavit and accompanying exhibits, which explained the time line of all the transactions and any conversations he had with Mr. Willis and CW Buffalo. He also explained how he came into possession of Action's inventory. The exhibits to Mr. Eva's affidavit also included all of the agreements in question between the parties. Action opposed the motion and attached Mr. King's affidavit in support of its position. Action later filed a supplemental memorandum in opposition to summary judgment to which it attached Mr. Eva's deposition transcript, Mr. King's affidavit provided in the lawsuit against CW Buffalo, and paperwork associated with some of the snowmobiles Most Wanted acquired from Action. After a hearing, the district court determined Action had failed to provide any evidence that would support the claims in the complaint and, consequently, granted summary judgment in favor of Most Wanted. Action filed a timely notice of appeal.
STANDARD OF REVIEW
[¶8] We review a district court's summary judgment order de novo . When conducting this review, we
review a summary judgment in the same light as the district court, using the same materials and following the same standards. Snyder v. Lovercheck , 992 P.2d 1079, 1083 (Wyo. 1999) ; 40 North Corp. v. Morrell , 964 P.2d 423, 426 (Wyo. 1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. Id . A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Id . If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. Roberts v. Klinkosh , 986 P.2d 153, 155 (Wyo. 1999) ; Downen v. Sinclair Oil Corp ., 887 P.2d 515, 519 (Wyo. 1994).
Rogers v. Wright , 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016) (quoting Inman v. Boykin , 2014 WY 94, ¶ 20, 330 P.3d 275, 281 (Wyo. 2014) ). We have further discussed each parties' burden and the requirements of those respective burdens:
After a movant has adequately supported the motion for summary judgment, the opposing party must come forward *321 with competent evidence admissible at trial showing there are genuine issues of material fact. Wyo.R.Civ.P. 56(e) ; Hyatt v. Big Horn Sch. Dist. No. 4 , 636 P.2d 525, 528 (Wyo. 1981). The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings ..., and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden.
Jones v. Schabron , 2005 WY 65, ¶ 10, 113 P.3d 34, 37-38 (Wyo. 2005) (quoting Downen v. Sinclair Oil Corporation , 887 P.2d 515, 519 (Wyo. 1994) ). The evidence supporting the opposition to summary judgment must be competent and admissible, "lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Id ., ¶ 11, 113 P.3d at 38. "Speculation, conjecture, the suggestion of a possibility, guesses, or even probability are insufficient to establish an issue of material fact." Id .
DISCUSSION
Fraud and Negligent Misrepresentation Claims
[¶9] The district court considered Action's claims for fraud and negligent misrepresentation together because the two claims are based on similar allegations. We will also consider these claims together. Action alleged Most Wanted, acting through CW Buffalo, made fraudulent and negligent misrepresentations to Action to induce it to enter into business agreements with CW Buffalo and Most Wanted. To prevail on the fraud claim at trial, Action would have to prove by clear and convincing evidence: 1) Most Wanted made a false representation intended to induce action by Action; 2) Action reasonably believed the representation to be true; and 3) Action relied on the false representation and suffered damages. Birt v. Wells Fargo Home Mortg., Inc. , 2003 WY 102, ¶ 42, 75 P.3d 640, 656 (Wyo. 2003). To prevail on the negligent misrepresentation claim, Action would have to prove by a preponderance of the evidence:
One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, [1] supplies false information for the guidance of others in their business transactions, is subject to liability for [2] pecuniary loss caused to them by [3] their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Id . Further, to prove CW Buffalo was acting as an agent of Most Wanted, Action must prove Most Wanted controlled the conduct of CW Buffalo. Redco Constr. v. Profile Properties, LLC , 2012 WY 24, ¶ 43, 271 P.3d 408, 420 (Wyo. 2012). Most Wanted moved for summary judgment on the basis that Action had provided only speculation to support its allegation that Most Wanted made any representations to Action, either directly or through CW Buffalo.
[¶10] In support of its motion, Most Wanted attached Mr. Eva's affidavit. Mr. Eva stated: "Neither I nor anyone else at Most Wanted had any discussions or communications with Shaun King where we would have made any representations of any kind to him." Mr. Eva further said:
In no way was David Willis or Kevin Donovan ever acting as an agent of myself or Most Wanted in their dealings with Shaun King and Action. As I stated previously, there were hard feelings and we wanted nothing of any type of ongoing relationship with Willis, Donovan and particularly Shaun King. The only dealings of substance with Mr. Willis occurred after Willis asked if we were willing to buy Action and we said we were interested.
At no time could or did we control or direct the actions or conduct of David Willis or Kevin Donovan in their dealings with Shaun King.
In the complaint, Action insinuated a meeting between Mr. Eva and Mr. Willis on December 15, 2012, at Sidewinders Restaurant in Jackson, was held to further their plan to gain control of Action, ultimately resulting in Most Wanted purchasing Action. Mr. Eva explained the circumstances surrounding the *322 December 15th meeting and that it had nothing to do with Most Wanted attempting to acquire Action:
We heard that Dave Willis was spending a lot of time at Action and so assumed that he had developed some relationship with Shaun King and he wasn't coming into our shop anymore. Dave Willis called several times and tried to talk to one of our other owners, Tyler Doucette, to 'discuss the Redneck litigation', but Tyler wanted nothing to do with him or Shaun King. But that he wanted to 'discuss the Redneck litigation', reaffirmed our belief that he had some relationship with Shaun King and Action.
In December, I called Dave Willis and said I would talk to him. I thought this was a good opportunity to meet with him to see if he was proposing a way to resolve the litigation.
I met him at Sidewinder's restaurant in Jackson, Wyoming on December 15, 2012. At the meeting he told me that he was the owner of Action and that he was going to give the performance kit to Polaris. I told him that it was not his to give. The discussion became rather heated and he told me that "I'm the f****ng owner of Action and I'll do what I want with it." I told him I didn't believe that he was the owner of Action and I was done talking to him until he proved he owned it.
I admit that I was also upset with him as I felt that he had taken some of what I had told him about our long-term plans and desires about the Polaris dealership and had gone to Shaun King, invested money to save the Action business and thus prevent or delay what I thought was the certain collapse of Action through mismanagement.
Mr. Eva also explained that most of his interactions with Mr. Willis ended with Mr. Willis being asked to leave Most Wanted's premises and that Most Wanted had no interest in various offers made by CW Buffalo. These offers included CW Buffalo and Action purchasing Most Wanted and CW Buffalo, Action, and Most Wanted merging into one business.
[¶11] This evidence, if undisputed, establishes that Most Wanted did not make any direct representations to Action regarding any business transactions. Further, this evidence demonstrates that CW Buffalo was not acting as an agent of Most Wanted. Therefore, Most Wanted carried its burden of demonstrating it was entitled to judgment as a matter of law on these claims. The burden then shifted to Action to provide competent and admissible evidence, and not speculation, conjecture, or the suggestion of a possibility or probability, that the material facts as presented in Mr. Eva's affidavit are actually in dispute. Jones , 2005 WY 65, ¶ 11, 113 P.3d at 38.
[¶12] The record shows Action failed to carry its burden of showing any material fact in dispute regarding the fraud and negligent misrepresentation claims. Action's response in the district court was riddled with conclusory statements without citation to evidence in the record that supports such conclusions. For example, Action states:
• "The factual allegations, construed in the light most favorable to Plaintiff, show that there are many badges of fraud here. CW [Buffalo] made false representations to Action. Most Wanted then made false representations to Action. Plaintiff relied on the representations and suffered damages."
• "CW [Buffalo] and Most Wanted were acting in concert to take the Polaris dealership away from Action and transferred to Most Wanted."
• "Plaintiff has shown that CW [Buffalo] and Most Wanted had communications prior to any documents being signed. The short duration between the first [Asset Purchase Agreement] and the letter of intent is evidence of fraud."
• "Further, Most Wanted made promises in writing that it would assume certain liabilities to Action's customers-a promise they made to induce Action into singing [sic] the second agreement in April-Promises Most Wanted never planned on keeping."
These conclusory statements are merely a second recitation of the allegations contained in Action's complaint and do not constitute *323 evidence. See Jones , ¶ 10, 113 P.3d at 37-38. Further, some of Action's specific factual allegations in the response have no citation to where the evidence can be found. For example, without citation to the record, Action states: "Eva told Willis in an email if you get the business I will buy the franchise from you." This is insufficient for Action to overcome its burden in the summary judgment proceedings. W.R.C.P. 56(c)(1)(a) (party asserting a fact is genuinely disputed must support the assertion by citing to particular parts of the materials in the record).
[¶13] Although Action does not give any pinpoint cites in the discussion contained in its response to Most Wanted's motion, it attached Shaun King's affidavit as support to defeat summary judgment. However, much of Mr. King's affidavit suffers from the same conclusory statements found in Action's response. "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." W.R.C.P. 56(c)(4). Many of the statements in Mr. King's affidavit are conclusory statements that are not based on personal knowledge and would not be admissible as evidence. In fact, Mr. King's affidavit generally is a timeline of what he alleges occurred and not facts to which he can personally attest. For example, he states:
• "CW [Buffalo] and Most Wanted were working together to get the Polaris dealership away from Action."
• "I did not know CW [Buffalo] was conspiring with Most Wanted to take the Polaris dealership rights."
• "I was not aware that CW [Buffalo] was acting on behalf of Most Wanted when they made all these representations to me."
To the extent some of the information in the affidavit is admissible, it does not demonstrate a dispute regarding a material issue of fact. Of significance, Mr. King discusses representations made by CW Buffalo to Action. However, the fact that CW Buffalo made representations to Action standing alone does not create a dispute about whether those representations were false or done at the behest of Most Wanted. Action needed to present admissible and competent facts, not conclusions, showing that the representations were false, and that Most Wanted controlled CW Buffalo when the representations were made.
[¶14] Action also argues the district court ignored evidence it thinks supports its claim that Most Wanted never intended to pay the liabilities it assumed when it acquired Action. Action's appellate brief does not cite to anything in the record to support this contention other than its complaint. Again, the complaint is not evidence. See Jones , ¶ 10, 113 P.3d at 37-38 (party opposing summary judgment cannot rely only upon allegations and pleadings, but must come forward with competent evidence admissible at trial showing a genuine issue of material fact). Action suggested to the district court that Most Wanted's intent to never pay Action's liabilities was demonstrated by how Most Wanted computed the purchase price. In his deposition, Mr. Eva explained Mr. King had offered in the past to sell the Polaris dealership to Most Wanted for $300,000. Therefore, Mr. Eva's consideration began at $300,000 and he then deviated downward from that amount to account for the outstanding liabilities he would assume in purchasing Action. Despite Action's suggestions to the contrary, this testimony does not suggest Most Wanted never intended to pay Action's liabilities. In fact, it demonstrates the opposite, particularly in conjunction with Mr. Eva's further testimony describing the various liabilities Most Wanted did pay. Additionally, while Mr. King asserted in his affidavit that he had received letters and phone calls from creditors and customers demanding payments on debts Most Wanted assumed in the purchase of Action, Action has not provided those letters or any affidavits from these various creditors.
[¶15] Action failed to provide facts to support its allegations of false statements or an agency relationship between CW Buffalo and Most Wanted. Consequently, we conclude those allegations are based solely on speculation and conjecture, which is insufficient to satisfy Action's burden of demonstrating a *324 genuine issue of material fact. See Jones , ¶ 11, 113 P.3d at 38. Because Action did not present competent and admissible evidence showing that Most Wanted made any false representations, or that CW Buffalo made false representations at the behest of Most Wanted, the district court properly granted summary judgment in favor of Most Wanted on the fraud and negligent misrepresentation claims.
Civil Conspiracy Claim
[¶16] Action alleges that Most Wanted and CW Buffalo conspired with one another to engage in a series of fraudulent acts and communications that would ultimately conclude with Most Wanted "stealing" the Polaris dealership from Action. In order to bring a civil conspiracy claim, a plaintiff must state an underlying cause of action in tort. White v. Shane Edeburn Constr., LLC , 2012 WY 118, ¶ 30, 285 P.3d 949, 958 (Wyo. 2012). The plaintiff must then prove: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate cause thereof." Id .
[¶17] Just as with the claims of fraud and negligent misrepresentation, Most Wanted made a prima facie showing that Most Wanted and CW Buffalo did not engage in discussions regarding a nefarious takeover of Action. Mr. Eva's affidavit demonstrates that discussions between Most Wanted and CW Buffalo before CW Buffalo took over the management of Action were about (1) the "Redneck Litigation" or (2) Action and CW Buffalo buying out Most Wanted, and not about any improper takeover of Action. Further, those conversations indicated disagreement between CW Buffalo and Most Wanted, not a conspiracy. Just as with the fraud and negligent misrepresentation claims, Action has failed to carry its burden of producing evidence showing a disputed fact about these discussions. Action did not present any facts which could establish that Most Wanted and CW Buffalo had a meeting of the minds to "steal" the Polaris dealership from Action. The district court properly granted summary judgment in favor of Most Wanted on this claim.
Conversion Claim
[¶18] Action claims in early February 2013, Most Wanted, with the assistance of CW Buffalo, converted Action's inventory, computers, and files to its own use while Mr. King was out of the country. In its summary judgment order, the district court determined that Most Wanted acquired the inventory without fault. It also determined that a release of liability clause in the March 15 sale agreement signed by Action released any claim Action had against Most Wanted regarding the inventory. That language states:
11.4 Mutual Release. Without negating or limiting Buyer's [Most Wanted] and Seller's [CW Buffalo] indemnity obligations to each other as stated in this Article 11, upon all of the representations and warranties made by all of the parties hereto being true as of the closing of this Agreement and remaining true thereafter, and upon all of the mutual promises and covenants contained herein being performed by each party so obligated, then:
a. Action Snowmobile and RV Inc. and Shaun King do thereafter release, remise, and forever discharge all claims, actions, causes of actions, demands, damages, and losses whether past or future, known or unknown, whether in equity or in law, including specifically all claims for general damages, special damages, compensatory damages, punitive damages, exemplary damages, costs of litigation, counsel fees and/or attorneys' fees, against Seller [CW Buffalo] and Buyer [Most Wanted] and their stockholders, members, directors, employees, insurers, attorneys, heirs, successors, or assigns arising or in any way connected to the Business and/or the Assets and/or the Action/CW APA.
This agreement was signed by Action, Most Wanted, and CW Buffalo. The district court correctly acknowledged that if the contract had been procured by fraud, the release language would not be enforceable. However, because the district court found no evidence to support a fraud claim (just as we have done), the release language is enforceable, *325 and supports summary judgment in favor of Most Wanted.
[¶19] On appeal, Action presents only three paragraphs, each containing a separate assertion, to support its contention that summary judgment on the conversion claim is improper. The first paragraph appears to challenge the court's conclusion that Most Wanted's acquisition of the inventory was without fault. That paragraph, however, provides no cogent argument or citations to the record. On that basis, we summarily affirm the district court's order on this issue. See, Byrnes v. Harper , 2018 WY 21, ¶ 10, 411 P.3d 427, 430 (Wyo. 2018).
[¶20] In the second paragraph, Action argues we must reverse the district court's grant of summary judgment because the March 15 agreement containing the release language is not reflected in the record. When Action filed its brief, its assertion was technically correct. Mr. Eva's affidavit refers to the March 15 purchase agreement, and designates that agreement as Exhibit 5; however, the Exhibit 5 actually attached to the affidavit is an agreement between Action and CW Buffalo dated January 23, 2013. After the appellate briefs were filed and at the request of Most Wanted, the district court supplemented the record on appeal, as allowed by W.R.A.P. 3.04, with the correct Exhibit 5-the March 15 purchase agreement. The district court explained that Most Wanted provided the correct Exhibit 5 at the summary judgment hearing and that, while Action had expressed the possibility it would object, it ultimately did not object to the substitution of the correct Exhibit 5. The district court further explained that both parties relied on the exhibit at summary judgment and during Mr. Eva's deposition. Therefore, Action's argument has been rendered moot.
[¶21] Finally, Action's third paragraph of argument on this issue focuses on the fact that a contractual release of claims is not valid if the contract was procured by fraud. We agree with Action's recitation of the general rule. See, Snyder v. Lovercheck , 992 P.2d 1079, 1085-86 (Wyo. 1999). However, because we have already determined that Action failed to produce any evidence that the purchase agreement with Most Wanted was fraudulently procured, the provision releasing any future claims is valid. Therefore, the district court properly granted summary judgment in favor of Most Wanted.
CONCLUSION
[¶22] Most Wanted presented a prima facie showing that there were no genuine issues of material fact regarding any of the claims contained in Action's complaint. Action failed to come forward with competent and admissible evidence demonstrating that any material facts were in dispute. The district court properly granted summary judgment in favor of Most Wanted.
[¶23] Affirmed.