# THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 65

APRIL TERM, A.D. 2022

May 27, 2022

BENOIT JEAN FRANCOIS XAVIER
PELLET,

Appellant
(Defendant),

v.                                                        S-21-0204

ANITA BERWIND STRAWBRIDGE
PELLET,

Appellee
(Plaintiff).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant:*
Devon P. O'Connell, Dustin J. Richards, and Crystal Dawn Stewart of Pence and MacMillan, LLC.  Argument by Ms. O'Connell.

*Representing Appellee:*
John Graham and Julie A. O'Halloran of Geittmann Larson Swift LLC. Argument by Mr. Graham.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    Benoit Pellet ("Husband") appeals several orders entered by the district court in his divorce proceedings with Anita "Nini" Pellet ("Wife").  He argues the district court erred by enforcing the parties' Mediated Settlement Agreement ("MSA") and incorporating its terms into a decree of divorce.  Husband further claims the district court erred when it denied his motion for sanctions for Wife's alleged failure to disclose assets, and when it denied his motion to dismiss for *forum non convieniens*.  We affirm.

## ISSUES

[¶2]    Husband presents three issues on appeal, which we restate as follows:

> 1. Did the district court err when it found the MSA was binding and enforceable?
>
> 2. Did the district court abuse its discretion when it found Husband's motion for sanctions was moot?
>
> 3. Did the district court abuse its discretion when it denied Husband's motion to dismiss for *forum non conveniens*?

## FACTS

[¶3]    The parties were married on September 5, 1992, in Scarborough, Maine, and they have three adult children.  For the first twenty years of their marriage, the parties resided primarily in France, but they also spent time at a residence they purchased in 2008 in Scarborough, Maine.  In 2012, the parties moved to Jackson, Wyoming, and purchased a home in 2015.  The parties also purchased an apartment in Paris, France, in 2018.  Although the apartment was purchased with proceeds generated from the sale of jointly owned property, Husband unilaterally placed the apartment under the ownership of a French corporation named SCI Les Triples.[1]  Husband and the parties' three adult children own interests in the SCI.

[¶4]    The parties separated on May 8, 2019.  After the separation, Husband moved back to France and resided in the Paris apartment.  Wife filed for divorce on August 2, 2019, in Teton County, Wyoming.  On November 19, 2019, Husband filed a motion to dismiss the complaint alleging he had not been properly served.  Wife asked for additional time to accomplish proper service.  The district court granted Wife an additional sixty days to serve

---

[1] SCI stands for Société Civile Immobilière, which is a type of French corporation used to circumvent France's default heirship rules and inheritance tax. Jean-Marc Tirard, *The French Perspective*, 19 Int'l L. Practicum 142, 148–49 (Autumn 2006).

Husband. Wife took steps to serve husband in accordance with the French Civil Code and the Hague Convention.

[¶5]     On April 2, 2020, Husband filed a second motion to dismiss the complaint, arguing he still had not been properly served. This motion also asked the district court to dismiss the action on the grounds of *forum non conveniens*. Husband alleged France was the more appropriate forum because the parties executed a contract in France in 2018, called a "matrimonial property regime," whereby they agreed to utilize French law in matters of property distribution.[2] Husband alleged the case would proceed more efficiently in France because there would be fewer errors due to faulty translation or misinterpretation of French law. Husband indicated he had initiated a divorce proceeding in France on February 6, 2020, and a hearing was set in that case on May 27, 2020.

[¶6]     In her response to the second motion to dismiss, Wife asserted she had properly served Husband. She set forth a detailed analysis of why Wyoming was a more convenient forum than France. She alleged the parties had significant contacts with Wyoming, and the case should remain in her chosen forum. Although she acknowledged the parties signed the matrimonial property regime agreement in France, she asserted the document did not have to be interpreted or enforced by a French court.

[¶7]     The district court denied the second motion to dismiss in part, finding service was properly accomplished under French law and the Hague Convention. The district court reserved ruling on the inconvenient forum portion of the motion and set a status conference to discuss the French divorce case. At the status conference, the parties informed the district court the hearing in the French divorce action had been postponed until November or December 2020. The district court requested additional briefing on the effect of the matrimonial property regime agreement.

[¶8]     On August 17, 2020, the district court denied Husband's motion to dismiss and concluded the matrimonial property regime agreement did not contain a forum selection clause, Wyoming courts were capable of applying French law, and the case should remain in Wife's chosen forum. Husband appealed the district court's order, but his appeal was dismissed for lack of jurisdiction.[3]

[¶9]     The parties agreed to mediation. The mediation date was changed multiple times because Husband retained new counsel and claimed Wife had not disclosed key financial information about her interest in her family's trusts. The mediation was held on February

---

[2] Although the matrimonial property regime agreement was executed in 2018, it stated it was intended to be retroactive to September 5, 1992. Throughout the record, the parties were inconsistent with how they characterized this document. Sometimes it was referred to as prenuptial or an antenuptial agreement and other times it was referred to as a postnuptial agreement. For the sake of clarity, we will refer to it as the matrimonial property regime agreement.

[3] Pellet v. Pellet, S-20-205 (Wyo. Oct. 19, 2020) (order dismissing appeal).

17–19, 2021, and, after a two-and-a half-day mediation, the parties executed the MSA, which was signed by both parties and their respective attorneys, on February 19, 2021. The MSA stated:

> This Agreement resolves all outstanding issues in the civil case pending in the Ninth District Court of Fremont [sic] County as Civil No. 18043. The terms of this Agreement are binding on Nini and Benoit. Both parties recognize the terms of this Agreement are enforceable under W.R.C.P. 40. Both parties were represented by legal counsel and had enough time to consider all terms, consult with their respective attorneys about all terms, and enter into the Agreement freely and voluntarily.

The MSA was executed as "a full, final and binding settlement agreement."

[¶10] The MSA divided the parties' real property specifying Husband "shall receive" the apartment in Paris, France, and Wife "shall receive" the Maine and Wyoming residences. The MSA also divided the parties' personal property, bank accounts, investment accounts, and airline miles. Because Wife received two pieces of real property, she was required to make a substantial cash equalization payment to Husband. The MSA declared each party would be "solely responsible for taxes, including capital gain taxes, related to the assets awarded to him and her[.]" The MSA allowed Husband to reside in the Maine residence until October 2021, except for the last two weeks of July and the first two weeks of August.

[¶11] Wife's attorney was assigned to prepare a final marital settlement agreement incorporating the terms of the MSA. However, the MSA stated if the parties could not agree on a final form for the agreement within thirty days, "this document shall serve as the Agreement of the parties and may be used by either party to facilitate final resolution of the case including a request to incorporate the terms of this Agreement in a final Judgment and Decree of Divorce."

[¶12] Shortly after the mediation, Husband contacted Wife claiming the Paris apartment portion of the MSA had "enormous problems" under French law. He asserted the Paris apartment could not be transferred to him as his separate property without the consent of the parties' adult children, and the children had informed him they would not consent to the transfer or sale of the apartment. He also alleged he would incur unanticipated tax consequences if the Paris apartment was sold. Because of these alleged problems, Husband refused to sign a final settlement agreement or a stipulated divorce decree.

3

[¶13] On April 6, 2021, Wife asked the district court to enter a decree of divorce that divided the parties' marital property in accordance with the MSA.[4] She informed the district court the parties were unable to agree on the final form of a settlement agreement or a stipulated decree. Wife asserted Husband was attempting to void the MSA by contacting the parties' adult children after the mediation and instructing them to withhold their consent to the transfer or sale of the Paris apartment. Wife asked the district court to enforce the MSA and enter a decree of divorce that incorporated its terms.

[¶14] On April 20, 2021, Husband asked the district court to vacate the MSA and find it was void due to mutual mistake, fraud, impracticability, or commercial frustration.[5] Husband alleged Wife misrepresented during mediation the children would consent to the transfer of the Paris Apartment, and he relied on this representation when he signed the MSA. He asserted there was no meeting of the minds because of this misrepresentation, and the MSA was unenforceable. Husband requested an evidentiary hearing on his motion.

[¶15] In response, Wife admitted she spoke with one of the children during the mediation, and based on that conversation, she represented there was support for Husband having the exclusive use of and rights over the Paris apartment. She argued Husband was precluded from asserting mutual mistake, impracticability, or commercial frustration to void the MSA because he instructed the children to refuse their consent. Wife alleged Husband made incorrect statements about the ownership structure of the SCI, and he had "misrepresent[ed] the rights and ownership of the Paris apartment." She explained an SCI is very similar to a limited liability company, except an SCI distinguishes between current interest owners and future interest owners. When Husband created the SCI, he elected to identify himself as the sole current interest owner and their adult children as the future interest owners. Wife asserted Husband had the exclusive use of and management authority over the assets of the SCI because he was the managing member and sole current interest owner. She argued he had the exclusive right to live in the Paris apartment, and he could sell it and apply the proceeds to the purchase of other real estate. Should he do so, he would then be entitled to occupy, rent, sell, or trade that real estate for other assets. Accordingly, Wife asked the district court to grant the divorce and enforce the MSA.

[¶16] On July 1, 2021, Wife filed an emergency motion indicating Husband refused to vacate the Maine residence for the last two weeks of July and first two weeks of August, as he was obligated to do under the MSA. She asked the district court to enter an emergency order enforcing this portion of the MSA. The district court set an emergency hearing on this motion for July 14, 2021.

---

[4] This pleading was not verified. However, on May 27, 2021, Wife filed an affidavit wherein she stated: "Prior to filing, I reviewed the Motion for Judgment of Divorce filed on April 6, 2021. I verify, under oath, that all statements in the Motion are true and accurate to the best of my knowledge."

[5] Although this pleading was captioned as a verified motion, the verification page was blank. A signed verification page was not submitted until May 5, 2021.

4

[¶17] On July 13, 2021, Husband filed a motion for sanctions alleging Wife failed to disclose her interests in her family's trusts. He renewed his allegations about Wife's fraudulent misrepresentation concerning the children's consent. He argued Wife should be sanctioned for this conduct, and the MSA should be set aside. He again requested an evidentiary hearing.

[¶18] The district court held a hearing on the emergency motion to enforce the MSA on July 14, 2021.[6] The next day, the district court entered its *Order on Motions to Enforce, For Entry of Decree, and to Vacate Settlement*. That order indicated the district court ruled from the bench on the emergency motion. The district court found it had inherent authority to enforce settlement agreements, and it further found: "In this case, the parties did settle out of court, with legal advice. Their settlement is evidenced by the written Settlement Agreement, signed by both parties and their counsel." The district court determined Husband had ample notice of his obligation to vacate the Maine residence for the four-week period, and he had not cited any legal basis for not enforcing this portion of the MSA either in his briefing or at the hearing. The district court granted the emergency motion and ordered Husband to vacate the Maine residence for the four-week period.

[¶19] The district court then addressed the motions to enforce or vacate the MSA without a hearing. It found "pursuant to W.R.C.P. 6 that no hearing [was] required on these two motions." The district court held:

> 18. Husband asserts, after signing the Settlement Agreement, that he learned later that if he sold the Paris apartment, he would face tax liabilities. He asserts this is a basis to set the Settlement Agreement aside, on the basis of no meeting of the minds, mutual mistake or fraud. He also asserts that due to the ownership structure for that apartment, the tax consequences would impact the parties' adult children and that the children did not consent to the sale. The parties also contest whether the sale of the Paris apartment is proper under French law and under the parties' French marriage contract. Husband asserts it is not. Wife asserts these issues were resolved in consultation with French legal counsel throughout the 2-1/2 day mediation. Each party nevertheless provides a lengthy legal memorandum from French counsel on this issue.

---

[6] It appears this hearing was not reported because no transcript of this hearing appears in the record. The parties did not submit a statement of the evidence pursuant to W.R.A.P. 3.03. The only information regarding this hearing comes from the district court's order, which states: "Each party presented testimony at the July 14 hearing. The testimony was largely based in equity, i.e., whether it [was] fair to require Husband to move out for four weeks."

19. As noted previously, the Settlement Agreement does not contemplate the sale of the Paris apartment. The legal memoranda and apparent dispute center around that potential sale. This is an issue outside the four corners of the contract, requiring parole [sic] evidence where no ambiguity exists within the contract.

20. The Court can appreciate the dispute between the parties but finds the procedural posture of the dispute is not ripe for review. The Court finds it appropriate to enter the Settlement Agreement without an adjudication of the lengthy and detailed allegations raised by the parties at this time.

21. The Court has reviewed the Settlement Agreement. It is not ambiguous. As an unambiguous contract, the Court is limited to the four-corners of that agreement. The agreement does not indicate or suggest a sale of the Paris apartment or that performance of the Agreement is contingent on that sale or any other event. According to the Agreement, the Paris apartment is Husband's and any tax liability for his property is his.

22. After reviewing the lengthy briefing and attachments for both motions, the Court finds and concludes that the decree should be entered, incorporating the Settlement Agreement. The motion to vacate should be denied. This conclusion is consistent with the strong policy in Wyoming to enforce settlement agreements. This principle is true in the family law context as it is in any other civil case.

23. "Spouses may define their obligations to one another in a written agreement." *Lipps v. Lloyd*, 967 P.2d 558, 560 (Wyo. 1998) (citing *David v. David*, 724 P.2d 1141, 1143 (Wyo. 1986)). "Property settlement agreements entered into by the parties prior to a divorce action are generally recognized and given force and effect in the decree." *Prentice v. Prentice*, 568 P.2d 883, 886 (Wyo. 1977); *Lipps*, 967 P.2d at 560-561 (courts favor property settlements); *Rinehart v. Rinehart*, 52 Wyo. 363, 75 P.2d 390, 391-392 (1938).

24. A property settlement agreement is regarded as a contract, even though it is adopted in the decree, and contract law principles apply. *Prentice*, 568 P.2d at 886 (citing *Ulrich v. Ulrich*, 366 P.2d 999, 1002 (Wyo. 1961)). Where the parties

6

have entered into a property settlement agreement, courts are to "enforce the plain language of the agreement even if an argument can be made that a particular provision of the agreement is not necessarily consistent with one of the parties' [sic] interests." *Asherman v. Asherman*, 2009 WY 141, ¶ 11, 221 P.3d 302, 305 (Wyo. 2009).

25. This conclusion is also consistent with Paragraph 10 of the parties' Settlement Agreement which provides, in sum, that the Agreement is self executing after thirty days. That thirty-day period expired.

The district court denied Husband's motion to vacate the MSA and stated a decree of divorce would be entered by a separate order. The district court found Husband's motion for sanctions was moot. The district court entered the *Decree of Divorce*, which incorporated the terms of the MSA. This appeal timely followed.

## DISCUSSION

### I.  *Enforcement of the Mediated Settlement Agreement*

[¶20] The district court found the parties intended to and did enter into a binding settlement agreement when they executed the MSA. It found the MSA was unambiguous. Husband does not challenge these rulings on appeal. Instead, he asserts the district court abused its discretion by not holding an evidentiary hearing to determine whether the MSA was void due to mutual mistake, misrepresentation, fraud, or impossibility before deciding to enforce the MSA on its terms. He contends the district court's orders "should be reversed because the district court clearly failed to consider or misinterpreted the unassailable facts that the Paris Apartment cannot be transferred to [Husband]." If the MSA is not void, he asserts it should be set aside because it created an inequitable property division.

#### A. Deciding the Motion without a Hearing

[¶21] Motions are governed in part by Rule 6(c)(4) of the Wyoming Rules of Civil Procedure, which states in relevant part: "A request for hearing may be served by the moving party or any party affected by the motion within 20 days after service of the motion. The court may, in its discretion, determine such motions without a hearing." This rule expressly gives the district court the discretion to decide a motion without a hearing. *See In re U.S. Currency Totaling $7,209.00*, 2012 WY 75, ¶ 19, 278 P.3d 234, 239 (Wyo. 2012). "A district court enjoys considerable latitude in determining the procedural scheme it will follow in reaching its determinations, and we will not reverse such procedural decisions absent an abuse of discretion." *Simek v. Tate*, 2010 WY 65, ¶ 12, 231 P.3d 891,

896 (Wyo. 2010) (citing *Meyer v. Hatto*, 2008 WY 153, ¶ 11, 198 P.3d 552, 555 (Wyo. 2008)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Sears v. Sears,* 2021 WY 20, ¶ 13, 479 P.3d 767, 772 (Wyo. 2021) (quoting *Johnson v. Clifford*, 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018)). When deciding if the district court abused its discretion, the ultimate issue is whether it "could reasonably conclude as it did." *Id.*

[¶22] Rule 7(b)(1)(B) of the Wyoming Rules of Civil Procedure requires motions to "state with particularity the grounds for seeking the order." We have previously recognized a complaint should show the plaintiff is entitled to relief. *Tuttle v. Lee*, 2018 WY 104, ¶ 8, 425 P.3d 998, 1000 (Wyo. 2018) (stating a motion to dismiss will be sustained when the complaint shows on its face the plaintiff is not entitled to relief); *see also Harris v. Grizzle*, 599 P.2d 580, 583 (Wyo. 1979) (citing *Watts v. Holmes*, 386 P.2d 718, 719 (Wyo. 1963)). The same holds true for motions:

> Courts cannot grant a hearing in every motion filed, since those of a frivolous nature would impede the progress of those which are meritorious; thus, where the motion is clearly without substance and only another attempt to burden the court with frivolous contentions, a hearing is unnecessary and the motion should be denied. In addition, a court need conduct a hearing only when the allegations and moving papers are sufficiently definite, specific, nonconjectural, and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion.

61A Am. Jur. 2d *Pleading* § 337 (Feb. 2022) (footnotes omitted). If a motion does not show the movant is entitled to relief, a district court acts within its discretion by denying the motion without a hearing. *See generally Schneider v. State*, 2022 WY 31, ¶ 16, 505 P.3d 591, 595 (Wyo. 2022) (finding a court must hold a hearing on an application to remove an ignition interlock device if an applicant makes a prima facie showing of good cause); 49 C.J.S. Judgments § 458 ("The applicant is entitled to a hearing . . . if the material submitted by the applicant contains allegations of operative facts demonstrating that relief is warranted, and the facts sufficient to support granting relief are challenged by the opposing party.") (footnote omitted). We will therefore evaluate whether Husband's

motion[7] made a prima facie showing[8] that he was entitled to relief, requiring the district court to hold a hearing to receive additional evidence.

### 1. *Mutual Mistake*

[¶23] We will initially address Husband's argument the MSA is void due to mutual mistake. If we determine a mutual mistake exists, we may reform or cancel a contract. *Hansen v. Little Bear Inn Co.*, 9 P.3d 960, 964 (Wyo. 2000) (citing *Mathis v. Wendling*, 962 P.2d 160, 164 (Wyo. 1998)). Husband asserts the parties were mutually mistaken about whether their adult children would consent to the transfer of the Paris apartment. In the alternative, he argues the parties were mutually mistaken in their belief "the Paris apartment could be divided and transferred to [Husband] as his sole and separate property." He contends the district court should have considered additional evidence before it enforced the MSA "by its terms alone."

[¶24] While parol evidence is usually inadmissible when a contract is unambiguous, we make exceptions in the case of mutual mistake.[9] *Mathis v. Wendling*, 962 P.2d 160, 164 (Wyo. 1998). "A contract is voidable on grounds of mutual mistake when both parties independently make a mistake at the time the contract is made as to a basic assumption of the contract, unless the party seeking avoidance bears the risk of the mistake." *Kendrick v. Barker*, 2001 WY 2, ¶ 19, 15 P.3d 734, 740 (Wyo. 2001) (citing Restatement (Second) of Contracts § 152 (1981)).

> The mistake, however, must have been a mutual one. There must have been a meeting of the minds and a contract actually entered into, but, by reason of the mistake, the instrument as written does not express what was really intended by the

---

[7] Husband attached several documents to his motion. These attachments consisted primarily of emails and other documents containing hearsay that would not be admissible evidence under the Wyoming Rules of Evidence. *See Heimer v. Heimer*, 2021 WY 97, ¶¶ 21–25, 494 P.3d 472, 479–80 (Wyo. 2021). Although Husband verified his pleading and swore the statements in his motion were true and correct to the best of his knowledge, this does not transform the hearsay statements in these documents into admissible evidence. Husband could have attached affidavits from the adult children or other witnesses to his motion, but he did not. Wife's motion and response to Husband's motion suffer from the same deficiency. We will therefore only consider the sworn statements in the motions, and we will not consider the hearsay statements contained in the attachments.

[8] "Prima facie means '[s]uch evidence as is sufficient to establish a given fact, or the group or chain of facts and which if not rebutted or contradicted, will remain sufficient.'" *Schneider v. State*, 2022 WY 31, ¶ 15 n. 2, 505 P.3d at 595 n. 2 (Wyo. 2022) (quoting *Wyo. Bd of Land Comm'rs v. Antelope Coal Co.*, 2008 WY 60, ¶ 12, 185 P.3d 666, 669 (Wyo. 2008)).

[9] While the district court incorrectly concluded it could not consider parol evidence when determining the motions to enforce or vacate the MSA, [R. Vol. 3 at 677] we are free to affirm a district court's ruling on any basis appearing in the record. *Prancing Antelope I, LLC v. Saratoga Inn Overlook Homeowners Ass'n, Inc.*, 2021 WY 3, ¶ 41, 478 P.3d 1171, 1182 (Wyo. 2021) (quoting *Black Diamond Energy of Delaware, Inc. v. Wyo. Oil & Gas Comm'n*, 2020 WY 45, ¶ 45, 460 P.3d 740, 753 (Wyo. 2020)).

> parties. Both the mistake and its mutuality must be established
> by evidence that is clear and satisfactory.

*Cordova v. Gosar*, 719 P.2d 625, 641 (Wyo. 1986) (quoting *Russel v. Curran*, 206 P.2d 1159, 1166–67 (Wyo. 1949). The party claiming the mistake must also establish by clear and convincing evidence the mistake did not result from his own negligence. *Hansen*, 9 P.3d at 964 (quoting *Patel v. Harless*, 926 P.2d 963, 966 (Wyo. 1996)).

[¶25] Mistake means "a belief that is not in accord with the facts." *Hansen*, 9 P.3d at 964 (quoting Section 151 of the Restatement (Second) of Contracts (1981)). The word "mistake" is not used "to refer to an improvident act, including the making of a contract, that is the result of such an erroneous belief." *Id.* (quoting Restatement (Second) of Contracts, § 151 cmt. a (1981)). Furthermore, the erroneous belief must "relate to the facts as they exist at the time of the making of the contract," and a "party's prediction or judgment as to events to occur in the future, even if erroneous," does not constitute a "mistake." *Id.* (quoting Restatement (Second) of Contracts, § 151 cmt. a).

[¶26] We discussed the definition of "mistake" in *Hansen*. In that case, Mr. Hansen and Mr. Boling purchased stock in the Little Bear Inn. 9 P.3d at 962. They subsequently agreed Mr. Boling would purchase Mr. Hansen's stock. *Id.* As part of their agreement, Mr. Boling was required to secure his purchase obligation by obtaining a life insurance policy with a premium of less than $150.00. *Id.* at 962–63. However, after the contract was signed, Mr. Boling learned he was uninsurable at any price. *Id.* at 963. Mr. Hansen then sought recission of the contract on the grounds of mutual mistake. *Id.* The district court found Mr. Hansen failed to carry his burden of showing mutual mistake. *Id.* We agreed and found although neither party believed Mr. Boling would be uninsurable before entering into the contract, "the failure to adequately predict this result [was] not a mistake of the parties, but merely poor prognostication." *Id.* at 965.

[¶27] Applying this precedent to the facts of this case, Husband cannot use a claimed mistake about the children's future consent to the transfer or sale of the Paris apartment to invalidate the MSA. Even if the parties were mutually mistaken about whether the children would consent to the transfer or sale of the Paris apartment, this was an erroneous prediction about a future event. It is not the type of mistake that would allow the district court to invalidate the MSA under the doctrine of mutual mistake.

[¶28] A party cannot assert the doctrine of mutual mistake if he "bears the risk of the mistake." *Kendrick*, ¶ 19, 15 P.3d at 740 (citing Restatement (Second) of Contracts § 152 (1981)). A party bears the risk of the mistake when "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." *Id.* (quoting Restatement (Second) of Contracts § 154(b) (1981)). In such a situation, there has been no mistake, but instead

"conscious ignorance of the future." *Id.* (citing Restatement (Second) of Contracts § 154, cmt. c (1981)).

[¶29] This rule applies to a party's knowledge about the ownership of a piece of real property. *Anderson v. Sanchez*, 373 P.3d 860 (Nev. 2016). In *Anderson*, the parties had signed a memorandum of understanding ("MOU") which awarded a piece of property to the husband in exchange for a cash payment to the wife. *Id.* at 862. After signing the MOU, the husband attempted to withdraw from the agreement because his sister had an interest in the property based on an oral contract that had been entered into several years earlier. *Id.* The district court denied husband's motion to set aside the MOU and entered a divorce decree that incorporated the terms of the MOU. *Id.* The Nevada Supreme Court affirmed, finding the husband bore the risk of the mistake. *Id.* at 863. It found:

> If [husband] did not have sufficient knowledge of the legal consequences of any oral agreement with [his sister], he was aware of the facts underlying his claim that the Wilson property was the subject of an equitable trust and therefore not appropriate for distribution under the MOU, and he could have pursued the issue further rather than agreeing to settlement. *See* Restatement (Second) of Contracts § 154(c) (indicating that the court may allocate the risk of mistake to a party when it is reasonable under the circumstances); *cf. Janusz v. Gilliam*, 404 Md. 524, 947 A.2d 560, 567 (2008) (holding that a mutual mistake of law was not grounds to rescind a property settlement agreement particularly where both parties were represented by counsel during the negotiations and were on equal footing to know or learn of the relevant law). Thus, [husband] bore the risk of mistake when he entered into the MOU despite being aware of his limited knowledge.

*Id.*

[¶30] Consistent with the holding in *Anderson*, Husband cannot assert there was a mutual mistake about the transferability of the Paris apartment. Husband was keenly aware the Paris apartment was owned by the SCI. He unilaterally placed the ownership of the apartment into the SCI, even though it was purchased with joint funds. Before and during the mediation, Husband had the opportunity to confer with his French attorney about the transferability of the apartment under French law. He likewise had the opportunity to confer with the parties' children about whether they would consent to such a transfer. Husband treated his limited knowledge about the transferability of the Paris apartment and the children's consent as sufficient and signed the MSA. Husband bore the risk of any mistake about the transferability of this asset and has not shown the mistake did not result from his own negligence. We conclude Husband's motion did not make a prima facie

11

showing he was entitled to invoke the doctrine of mutual mistake to invalidate the MSA.

### 2. *Fraud*

[¶31] In Wyoming, we recognize fraud will vitiate a contract. *Snyder v. Lovercheck*, 992 P.2d 1079, 1089 (Wyo. 1999). Husband alleged Wife committed fraud when she "affirmatively represented to [him] (through the mediator) that the adult children, who are the owners of the SCI which owns the Paris apartment, would consent to the transfer." He asserted "[t]he issue of consent was misrepresented by [Wife], and thus was fraudulent." He also claimed he reasonably relied on Wife's "misrepresentation" when he signed the MSA.

[¶32] In a pleading or a motion, fraud must be alleged with "particularity." *See* W.R.C.P. 7(b)(1)(B); W.R.C.P. 9(b); *Mantle v. North Star Energy & Constr. LLC*, 2019 WY 29, ¶ 81, 437 P.3d 758, 786–87 (Wyo. 2019); *Bender v. Phillips*, 8 P.3d 1074, 1078 (Wyo. 2000); *Girard Trust Bank v. Martin*, 557 F.2d 386, 389–90 (3d Cir. 1977). To prevail on a fraud claim, a party must prove by clear and convincing evidence: (1) the defendant made a false representation intended to induce the plaintiff to act; (2) the plaintiff reasonably believed the representation was true; and (3) the plaintiff relied on the false representation and suffered damages as a result. *Action Snowmobile & RV, Inc. v. Most Wanted Performance, LLC*, 2018 WY 89, ¶ 9, 423 P.3d 317, 321 (Wyo. 2018). In addition, the party claiming fraud "must show that the misrepresentation was made intentionally, with knowledge of its falsity, or that the maker of the misrepresentation was at least aware that he did not have a basis for making the statement." *Excel Const., Inc. v. HMK Eng'g, Inc.*, 2010 WY 34, ¶ 33, 228 P.3d 40, 48–49 (citing *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 Wy 102, ¶ 42, 75 P.3d 640, 656 (Wyo. 2003); Restatement (Second) of Torts § 526 (1977)). Fraud is never presumed. *Mantle*, 2019 WY 29, ¶ 81, 437 P.3d at 787 (citing *Bitker v. First Nat'l Bank in Evanston*, 2004 WY 114, ¶ 12, 98 P.3d 853, 856 (Wyo. 2004)).

[¶33] In this case, Husband alleged Wife's statement about the children's consent was a fraudulent misrepresentation. However, he never actually alleged Wife's statement was false at the time it was made, or she did not have a basis for making the statement. Instead, he alleged he learned sometime after the mediation the children would not consent to the transfer. Because Husband failed to allege the essential elements of fraud, his motion did not make a prima facie showing he was entitled to relief on that ground.

### 3. *Impracticability or Impossibility*

[¶34] In the proceedings below, Husband asserted the MSA was impossible to perform, and thereby asserted the doctrine of impracticability rendered the MSA void. A party to a contract may invoke the rule of impracticability to excuse his performance "when supervening circumstances render performance of one of the conditions of the contract

impracticable." *Star Valley Ranch Ass'n v. Daley*, 2014 WY 116, ¶ 26, 334 P.3d 1207, 1213 (Wyo. 2014) (quoting *Mortenson v. Scheer*, 957 P.2d 1302, 1306 (Wyo. 1998)).

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

*Mortenson*, 957 P.2d at 1306 (emphasis omitted) (quoting Restatement (Second) of Contracts, § 261 (1979)). We have said "[i]mpracticability of performance is a strict standard that can only be invoked when the circumstances truly dictate the impracticability." *Mortenson*, 957 P.2d at 1306 (citing *Barrett v. Ballard*, 662 P.2d 180, 184 (Mont. 1980)). The doctrine cannot be invoked "when, under the contract, one party assumes the risk that fulfillment of a condition precedent will be prevented. The obligor is expected to provide in the contract for contingencies that are foreseeable." *Mortenson*, 957 P.2d at 1306 (internal citations omitted).

[¶35] Husband knew about the ownership structure of the Paris apartment, and he had the opportunity to consult with French counsel about the feasibility of transferring the apartment from the SCI to himself. The words "sole and separate property" do not appear in the MSA. Rather the document merely states Husband "shall receive" the Paris apartment. We "will not write terms into a contract under the guise of contract interpretation." *Schell v. Scallon*, 2019 WY 11, 433 P.3d 879, 885 (Wyo. 2019) (citing *Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 2017 WY 46, ¶ 42, 393 P.3d 1279, 1293–94 (Wyo. 2017).

[¶36] The district court found the MSA did not indicate or even suggest the performance of the agreement is contingent on any other event. There is nothing in the MSA to suggest the children's consent was a basic assumption on which the contract was made. The parties could have made the children's consent a prerequisite for their performance, but they did not. Therefore, Husband's motion failed to make a prima facia showing he was entitled to relief under the doctrine of impracticability. It is not impossible or impracticable for Husband to "receive" the Paris apartment, even without the children's consent. By signing the MSA, Wife disclaimed any interest she might have in the apartment. Husband will "receive" the Paris apartment, subject to the ownership structure he chose to create. The MSA can be performed as written, and Husband cannot use the doctrine of impossibility to void the agreement.

[¶37] Husband's motion failed to make a prima facie showing he was entitled to relief on the grounds of mutual mistake, fraud, impracticability, or impossibility. The district court

did not abuse its discretion when it denied Husband's motion to vacate the MSA without a hearing.

## B. Inequitable Property Distribution

[¶38] Husband asserts the Paris apartment must be transferred to him as his sole and separate property, or the property division in the MSA would be inequitable and must be set aside. We have stated:

> [E]ven though property settlements are favored by the courts and are generally recognized in Wyoming, the parties cannot oust a court's statutory duty to "make such disposition of the property of the parties as appears just and equitable" by entering into a property settlement agreement which the judge cannot in good conscience approve and adopt when granting a divorce.

*David v. David*, 724 P.2d 1141, 1143 (Wyo. 1986) (citing *Leighton v. Leighton*, 261 N.W.2d 457 (Wis. 1978); 24 Am. Jur. 2d Divorce and Separation § [528]). However, a property settlement incorporated into a decree will not be set aside unless the distribution would shock the conscience of the court, and it appears to be so unfair and inequitable that reasonable persons could not abide it. *Long v. Long*, 2018 WY 26, ¶ 22, 413 P.3d 117, 125 (Wyo. 2018) (citing *Kummerfeld v. Kummerfeld*, 2013 WY 112, ¶ 7, 309 P.3d 822, 824 (Wyo. 2013). "The question cannot be, What would we have done as trial judges? but must be and is, Did the trial judge act so outrageously in his property settlement decision as to constitute an abuse of discretion?" *Paul v. Paul*, 616 P.2d 707, 714 (Wyo. 1980).

[¶39] The property division in the MSA does not shock the conscience. Husband will receive the Paris apartment, subject to the alienability restrictions of the SCI, which has substantial value. He will also receive a substantial cash equalization payment, valuable cars, paintings, and a wine collection. We cannot say this division is so unfair and inequitable that reasonable persons could not abide it. *Long,* ¶22, 413 P.3d at 125. The district court did not err by enforcing the MSA and incorporating its terms into a decree.

## II.  *Denial of the Motion for Sanctions*

[¶40] Husband contends the district court erred when it denied his motion for sanctions on the basis that it was moot. Husband filed his motion under Rule 37 of the Wyoming Rules of Civil Procedure. As grounds for the motion, Husband renewed his allegations Wife failed to disclose her interests in some of her family's trusts. The district court determined the motion was moot because the parties entered into a binding settlement agreement that resolved all outstanding issues.

[¶41] We review a district court's rulings on discovery issues, including the issuance or non-issuance of sanctions, for an abuse of discretion. *Herrick v. Jackson Hole Airport Bd.*, 2019 WY 118, ¶ 11, 452 P.3d 1276, 1280 (Wyo. 2019). The question is whether the district court could have reasonably concluded as it did. *Sears,* ¶ 13, 479 P.3d at 772 (quoting *Johnson,* ¶ 8, 418 P.3d at 822).

[¶42] "[T]he central question in a mootness case is 'whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties. [13B Charles Alan] Wright [et al., Federal Practice & Procedure: Jurisdiction] § 3533 [(3d ed 2008)].'" *In re SNK*, 2003 WY 141, ¶ 17, 78 P.3d 1032, 1037 (Wyo. 2003) (quoting *Sw. Pub. Serv. Co. v. Thunder Basin Coal Co.*, 978 P.2d 1138, 1142–43 (Wyo. 1999)). The doctrine of mootness recognizes courts "do not wish to make law, nor to waste their limited resources, simply to satisfy a litigant's curiosity or a naked desire for vindication." Wright et al., supra § 3533. Mootness questions, like other questions arising from settlement agreements, should be answered according to the intent of the parties. *Reiman*, 838 P.2d at 1187–88 (Wright et al., supra, § 3533.2).

[¶43] The parties intended the MSA to be a full, final, and binding settlement agreement that would resolve "all outstanding issues" in the divorce action. The MSA provided it could "be used by either party to facilitate final resolution of the case including a request to incorporate the terms of this Agreement in a final Judgment and Decree of Divorce." The parties intended to resolve all their issues and avoid further litigation when they signed the MSA. Because the district court found the MSA was valid and enforceable, there was no reason to allow additional discovery, strike pleadings, enter default, preclude the introduction of certain evidence at trial, dismiss the case, or impose any of the other sanctions listed in W.R.C.P. 37. The district court did not abuse its discretion when it determined the motion for sanctions was moot.

[¶44] The second half of Husband's motion for sanctions referenced Rule 60 of the Wyoming Rules of Civil Procedure and asked the district court to set aside the MSA on the grounds of fraud. He again alleged Wife committed fraud by misrepresenting material information about the children's consent during the mediation. This motion suffered from the same deficiency as his motion to vacate the MSA. It did not allege Wife made the statement "intentionally, with knowledge of its falsity," or she "was at least aware that [s]he did not have a basis for making the statement." *Excel Const.,* ¶ 33, 228 P.3d at 48–49. Husband did not allege fraud with particularity, and the district court did not abuse its discretion when it denied the motion.

### III.    *Forum Non Conveniens*

[¶45] As a final argument, Husband argues the district court abused its discretion when it

denied his motion to dismiss for *forum non conveniens*.[10]  We generally review a district court's ruling regarding inconvenient forum for an abuse of discretion. *Saunders v. Saunders*, 2019 WY 82, ¶ 10, 445 P.3d 991, 996 (citing *Burnham v. Coffinberry*, 2003 WY 109, ¶ 8, 76 P.3d 296, 299 (Wyo. 2003); *West Texas Utils. Co. v. Exxon Coal USA, Inc.*, 807 P.2d 932, 935 (Wyo. 1991)).  Husband essentially argues the district court did not properly weigh the factors we adopted in *Saunders*.

[¶46]  However, earlier in this opinion, we found the parties entered into a valid, enforceable settlement agreement that was intended to resolve all the pending issues in this litigation.  This would include any issues about whether Wyoming was the proper forum for this divorce.  The parties reduced their contract to writing, and they must abide by its plainly stated terms. *Patel*, 926 P.2d at 966.  Husband relinquished any claim about inconvenient forum when he entered into the MSA, and we will enforce this relinquishment. *See Cowboy's LLC v. Schumacher*, 2018 WY 61, ¶ 13, 419 P.3d 498, 502 (Wyo. 2018).

## CONCLUSION

[¶47]  The district court did not abuse its discretion when it denied the motion to vacate the MSA without a hearing because Husband's motion failed to show he was entitled to invoke the doctrines of mutual mistake, fraud, or impracticability to invalidate the MSA.  The MSA did not create an inequitable property distribution, so the district court did not err by incorporating the terms of that agreement into a decree of divorce.  Because the MSA was a binding settlement agreement that resolved all the outstanding issues, the district court did not abuse its discretion when it denied the motion for sanctions as moot.  Further, the MSA resolved any outstanding issues relating to *forum non conveniens*.  Affirmed.

---

[10] Wife argues this issue is not ripe to be addressed. However, the divorce decree is a final appealable order, thereby procedurally making the district court's decision on the inconvenient forum issue reviewable.

16