# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 74

**APRIL TERM, A.D. 2025**

**July 9, 2025**

IN THE INTEREST OF: AB and JC,
minor children,

AC,

Appellant
(Respondent),

v.                                                                    S-24-0297

THE STATE OF WYOMING,

Appellee
(Petitioner).

*Appeal from the District Court of Sweetwater County*
The Honorable Richard L. Lavery, Judge

*Representing Appellant:*
    Jason C. Gay, Tynsky Law Office, P.C., Green River, Wyoming.

*Representing Appellee:*
    Bridget Hill, Wyoming Attorney General; Christina F. McCabe, Deputy Attorney
    General; Wendy S. Ross, Senior Assistant Attorney General; Callie R. Papoulas,
    Senior Assistant Attorney General.

*Guardian Ad Litem***:**
    Joseph R. Belcher, Director; Kimberly Skoutary Johnson; Wyoming Office of the
    Guardian Ad Litem, Cheyenne, Wyoming.

*Before BOOMGAARDEN, C.J., and FOX\*, GRAY, FENN, and JAROSH, JJ.*



* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), she was reassigned to act on this matter on May 28, 2025.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]    Mother appeals the dismissal of a neglect case the State of Wyoming brought against her. She asserts the juvenile court erred when it terminated the Department of Family Service's (DFS) legal custody of her child, AB, at the shelter care hearing and when it found DFS made reasonable reunification efforts. We find the matter is moot and dismiss the appeal.

## ISSUE

[¶2]    Although the parties present various issues on appeal, we find the following issue dispositive:

1. Are the issues raised on appeal moot?

## FACTS

[¶3]    This appeal presents a somewhat unusual set of circumstances involving a neglect petition against the mother of two half-siblings, AB and JC. The issues Mother raised on appeal relate only to AB. At the time of the petition, AB's father, who lived in Texas, did not have a custody arrangement. JC's father, who lived in Wyoming, did have a custody arrangement. As the State was pursuing its neglect proceeding against Mother in juvenile court, AB's father sought and secured a civil custody order for AB in a separate district court proceeding. The juvenile court then dismissed the neglect petition against Mother at the State's request. While our recitation of the facts and circumstances below includes certain facts relevant to the neglect proceedings, our primary focus is on the circumstances that lead us to conclude this matter is moot.

[¶4]    Rock Springs Police arrested Mother on February 13, 2023, for drug-related charges. The officers were responding to a report that Mother exposed AB and JC to illicit substances by using methamphetamine in their home. Following her arrest, the children were initially placed in protective custody. Later that day, JC was released to his father, who had primary custody of JC. AB was released to his paternal grandfather in Rock Springs.

[¶5]    On February 14, 2023, the State filed a petition in juvenile court alleging Mother neglected the children. The juvenile court held both the initial and shelter care hearings the same day, with appearances by Mother, AB's father (appearing remotely from Texas), AB's paternal grandfather, JC's father, and the guardian ad litem. Mother denied the allegations of neglect. With respect to AB, the State recommended shelter care continue with his paternal grandfather until his father arrived from Texas. The juvenile court agreed and ordered that AB could be released from DFS custody and into the care of his father once he was in Wyoming. Four days later, AB was released to his father. Meanwhile, Mother remained in custody for the criminal charges stemming from her arrest.

1

[¶6]    The juvenile court held an adjudication hearing on April 5, 2023. With the assistance of counsel, Mother admitted two of the neglect allegations, and the State dismissed the third allegation. The parties discussed the need for Mother to sign and complete a case plan. At that point, reunification was a potential goal for the permanency plan. At the hearing, AB's father informed the court he was planning to seek a custody order in a separate civil proceeding. The juvenile court then issued its finding that the children had been subject to neglect and ordered continued placement with their respective fathers pending Mother's completion of a DFS approved case plan.

[¶7]    By November 2023, Mother had completed several components of her case plan, including residential treatment and parenting courses. In addition, AB was with his father in a safe environment and AB's father had purportedly filed for custody of AB. As a result, on November 27, 2023, the State moved to dismiss the neglect petition against Mother because, according to the State, the matter had become simply a custody issue and was no longer subject to DFS's jurisdiction. The juvenile court entered an order granting the State's motion before receiving Mother's objections. After receiving Mother's objections, the juvenile court held a hearing on the motion. The State conceded it incorrectly stated in its motion to dismiss that AB's father had filed for custody of AB. However, the State acknowledged AB's father may still need to proceed with a separate custody proceeding because DFS did not have custody over AB. The juvenile court then vacated its dismissal and subsequently set a permanency review hearing for March 2024.

[¶8]    At the permanency review hearing on March 4, 2024, the juvenile court heard from the parties on DFS's reasonable efforts for reunification and the goals for permanent placement of the children. The parties discussed jurisdictional issues over AB and noted that Mother and AB's father were discussing a potential custody order. Mother confirmed that AB's father filed a custody petition for AB and suggested keeping the juvenile case open while she finished the final requirements of her case plan. Given the efforts between Mother and AB's father about a separate civil custody order, the State requested continuing with the status quo where Mother worked on her case plan and AB's father continued his custody effort. The guardian ad litem also recommended the juvenile court maintain the status quo for at least three months. As a result, the juvenile court ordered the status quo for an additional six months.

[¶9]    On June 21, 2024, the State again moved to dismiss the juvenile court proceeding. In support of its request, the State explained Mother had been successful in the treatment court program, was doing well in her sobriety, and was gainfully employed.[1] In addition, the State noted both fathers now had civil custody agreements over their respective children. The recently entered civil custody order regarding AB granted both Mother and Father legal

---

[1] Based on a quarterly progress report filed by DFS on May 30, 2024, it appears Mother had completed the necessary components of her case plan by this time.

custody, while Father was given physical custody.  Mother was also granted visitation privileges.  Mother objected to the State's effort to dismiss the juvenile court proceeding, arguing reunification had not been accomplished. The juvenile court dismissed the neglect petition and this appeal followed.  In briefing to this Court, Mother stated she now has physical custody of AB, at the request of AB's father.

## DISCUSSION

[¶10]  The guardian ad litem states this case does not present a live controversy but argues each of the three exceptions to mootness applies.  Neither Mother nor the State raised mootness in their principal brief, but Mother joined the guardian ad litem's position on mootness in her reply and asserted this Court should consider the substantive issues in light of the mootness exceptions.

[¶11]  "Mootness is a question of law that we review de novo." *In re DJS-Y*, 2017 WY 54, ¶ 6, 394 P.3d 467, 469 (Wyo. 2017).  "The central question in a mootness case is whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." *Pellet v. Pellet*, 2022 WY 65, ¶ 42, 510 P.3d 388, 401 (Wyo. 2022) (citation and internal quotation omitted).  "An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *In re DJS-Y*, ¶ 6, 394 P.3d at 469.

[¶12]  The parties were aware that the custody proceeding in district court, which ran a parallel course to this case, might obviate the need for further proceedings before the juvenile court.  Indeed, the Child Protection Act anticipates the juvenile court's jurisdiction may overlap with district court proceedings in certain instances.  *See* Wyo. Stat. Ann. § 14-3-403(b) (2025); *see also In re BAD*, 2019 WY 83, ¶ 31, 446 P.3d 222, 230 (Wyo. 2019) (discussing the statutory structure of the Child Protection Act).

[¶13]  The juvenile court honored Mother's initial objection to the State's first motion to dismiss and provided Mother with additional time to work on completing her case plan.  The State also made clear it recommended closure of the juvenile court matter once custody was established for AB.

[¶14]  When the State moved to dismiss the juvenile case in June 2024, it explained, "[t]he minors' fathers now have custody agreements per Judge's orders."  Accordingly, the juvenile court dismissed the neglect petition.

[¶15]  This case is moot because the State discontinued its neglect action against Mother after custody orders were in place and Mother acknowledges she has physical custody of AB.  Any judgment the Court might render on the issues Mother raises related to her dismissed neglect case would have no effect on her existing parental rights or AB, and thus, would constitute an advisory opinion.  *See Beppler*, ¶ 7, 477 P.3d at 527 (recognizing a

3

matter is moot when the issues appealed "will have no practical effect on the existing controversy.") (quoting *Powder River Basin Res. Council v. Wyoming Dep't of Envtl. Quality*, 2020 WY 127, ¶ 10, 473 P.3d 294, 297 (Wyo. 2020)); *see also In re SNK*, 2003 WY 141, ¶ 23, 78 P.3d 1032, 1038-39 (Wyo. 2003) (explaining this Court refrains from issuing advisory determinations). This is not the first instance where this Court has found an appeal moot after a juvenile court dismissed a neglect petition. *See In re CRA*, 2016 WY 24, ¶¶ 24-34, 368 P.3d 294, 300-01 (Wyo. 2016). And much like that case, any ruling this Court would make about the circumstances of AB's temporary custody during the juvenile neglect petition has no immediate effect on Mother, AB, JC, or the State. *Id.* at ¶ 27, 368 P.3d at 300 (finding the controversy over child's temporary custody was moot due to the district court's permanent custody order).

[¶16] Next, we consider whether this appeal falls within an exception to mootness. "The rule that a case must be dismissed when it becomes moot is not absolute." *In re DJS-Y*, ¶ 7, 394 P.3d at 469 (quoting *Operation Save Am. v. City of Jackson,* 2012 WY 51, ¶ 22, 275 P.3d 438, 448 (Wyo. 2012)). We recognize three exceptions to the mootness doctrine and will consider a moot issue "when: (1) the issue is one of great public importance; (2) we have deemed it necessary to provide guidance to state agencies and lower courts; or (3) the controversy is capable of repetition yet evading review." *Id.* (quoting *Circuit Court of the Eighth Judicial Dist. v. Lee Newspapers*, 2014 WY 101, ¶ 12, 332 P.3d 523, 528 (Wyo. 2014)).

[¶17] The guardian ad litem argues this case presents an issue of great public importance because the juvenile court proceedings temporarily adjudicated Mother's fundamental right to associate with her minor children. Absolutely, protection of the parent-child relationship is of great public importance. *In re CRA*, ¶ 27, 368 P.3d at 300. But Mother's appeal argues the juvenile court violated her procedural due process rights, not her right to familial association. Even so, Mother's appeal does not suggest her due process argument raises an issue of great public importance. Nor does she present an issue not already considered by this Court. *See, e.g., KC v. State*, 2015 WY 73, ¶¶ 32-34, 351 P.3d 236, 245 (Wyo. 2015) (discussing which juvenile court actions invoke a parents' substantial rights, and are therefore, appealable); *In re ECH*, 2018 WY 83, ¶ 29, 423 P.3d 295, 304 (Wyo. 2018) (discussing procedural requirements provided by the Child Protection Act at a shelter care hearing); *In re BG*, 2023 WY 40, ¶¶ 29-36, 528 P.3d 402, 412-13 (Wyo. 2023) (identifying the general due process rights afforded at a shelter care hearing and acknowledging an exception to those protections). Thus, we find the issues presented are not of such great public importance to warrant an exception to mootness. *See In re RM*, 2004 WY 162, ¶ 8, 102 P.3d 868, 871 (Wyo. 2004) (recognizing the question of what constitutes great public importance rests with the Court).

[¶18] The guardian ad litem also argues this appeal is necessary to provide guidance to state agencies and lower courts. Specifically, the guardian ad litem maintains this case can provide insight on the Interstate Compact on the Placement of Children (ICPC). The State

has not taken a position on whether any such guidance is needed for state agencies. Moreover, Mother does not brief an argument for interpreting or clarifying the ICPC; instead, her appeal presents the ICPC in a due process context. This Court recently considered a similar due process challenge, acknowledged the varying positions other state courts take on the applicability of the ICPC when placing a child with their natural out-of-state parent, and declined to offer the guidance the guardian ad litem now suggests warrants a mootness exception. *See In re SK*, 2024 WY 25, ¶¶ 44-48, 544 P.3d 606, 620 (Wyo. 2024). Absent complete briefing on the matter, and a compelling reason to deviate from our recent position, we decline to offer such guidance in this instance. *See In re CRA*, ¶ 31, 368 P.3d at 301 (finding it premature to apply the second exception to mootness).

[¶19] Finally, the guardian ad litem contends the issues presented are capable of repetition yet evading review. That mootness exception requires two elements: (1) "the duration of the challenged action must be too short for completion of litigation prior to its cessation or expiration," and (2) "there must be a reasonable expectation that the same complaining party will be subjected to the same action again." *Powder River Basin Res. Council*, ¶ 13, 473 P.3d at 298. We recognize the temporary nature of some guardianship and custody proceedings can make it inherently difficult to resolve a matter before the challenged action ends. *See In re Guardianship of MEO*, 2006 WY 87, ¶ 28, 138 P.3d 1145, 1154 (Wyo. 2006) (temporary guardianship); *see also In re CRA*, ¶ 31, 368 P.3d at 301 (temporary placement).

[¶20] Without considering whether the first element applies, we conclude Mother and the guardian ad litem have not demonstrated there is a reasonable expectation Mother (and AB) will be in the same position at some point in the future. *See In re CRA*, ¶ 32, 368 P.3d at 301-02 (finding the third exception to mootness does not apply because there was no reasonable expectation temporary custody would be required again). Accordingly, we find the third exception to Mother's appeal does not apply.

[¶21] Mother's appeal does not fall within a recognized exception to mootness. Any ruling would constitute an advisory opinion. *See In re SNK*, ¶¶ 18, 23, 78 P.3d at 1037-38 (recognizing "[a] case is moot when the determination of an issue is sought which, if provided, will have no practical effect on the existing controversy" and stating the Court will not issue advisory opinions).

## CONCLUSION

[¶22] The issues Mother raises in her appeal are moot. The State voluntarily dismissed its neglect petition against her considering the progress she made on her case plan and because the district court entered a custody order regarding AB. In addition, Mother again has physical custody of AB.

[¶23] Dismissed.